JULIA F. COOK, APPELLEE, v. WESTCHESTER FIRE INSUR-
ANCE COMPANY, APPELLANT, IMPLEADED WITH O. V.
PALMER & CO. AND CHARLES COOK, APPELLEES.

FILED APRIL 4, 1900. No. 9,200.

1. **Contract of Insurance.** A contract of insurance which does not
express the real intention of the parties thereto, may be re-
formed.

2. **Evidence.** Evidence examined, and found to sustain a finding
that the insurer intended to deliver an effective contract insur-
ing the owner of the building described in the policy.

APPEAL from the district court of Washington county.
Heard below before DICKINSON, J. *Affirmed.*

*Charles Offutt* and *W. W. Morsman,* for appellant.

*W. W. Morsman:* This court has, in two cases, decided
since the decree was entered in the case at bar, settled the
question involved. In *Home Fire Ins. Co. v. Wood,* 50
Nebr., 381, 385, wherein the facts were much like the case
at bar, it is said: "That a court of equity will relieve
against a mutual mistake there can be no question; but
it will not reform a policy of insurance or other contract
on the ground of a mistake of fact, unless the proof is
clear, convincing and satisfactory, and free from reason-
able controversy. The burden is upon the party alleging
the mistake to establish it upon the trial." In *Slobodisky
v. Phenix Ins. Co.,* 52 Nebr., 395, it is said in the syllabus:
"An insurance policy, like any other written contract,
may be impeached by either party thereto for fraud or
mistake, and parol testimony is competent to reform the
policy so as to make it recite the actual agreement be-
tween the parties. In order to authorize the reformation
of a written contract it must be made to appear what
the actual contract between the parties was; that the
written contract exhibited does not express the contract

made; and these facts must be established by clear, convincing and satisfactory evidence."

The decree of the court below upsets the most elementary rules in relation to the reformation of contracts in equity. The evidence does not establish a single one of the essential facts requisite to the exercise of that jurisdiction. There was a total and complete failure of proof. There was nothing in the nature of a mutual mistake of fact.

*Walton & Mummert, contra:* .

The cases cited by appellant do not apply to the actual case as it is here. With due respect to counsel, we are forced to differ from his statements that "the facts" in the case of *Home Fire Ins. Co. v. Wood,* 50 Nebr., 381, are "much" like those in the case at bar. The facts are entirely unlike. In that case the original contract was made as intended, and the question was whether the statement by the insured that he intended to carry about $5,500 stock and that he intended afterwards to take out more insurance, was sufficient notice of the additional insurance which he afterwards did take out, so as to prevent a forfeiture of the policy. The contract there conformed exactly to the facts as they existed at the time that the policy was made out. Future intentions or designs were not naturally a part of the policy as they might or might not be put into action. The insured failed to give notice of the other subsequent insurance, which by the terms of his policy was his duty to do and therefore forfeited his policy.

Both counsel for appellant and appellees cited and commented upon *Trustees of St. Clara Academy v. Delaware Ins. Co.,* 66 N. W. Rep. [Wis.], 1140.

SULLIVAN, J.

This is an appeal from a judgment of the district court of Washington county reforming and enforcing a contract of insurance. The property covered by the policy

in suit consisted of a stock of merchandise and a two-story frame store-building. The personal property belonged to Charles Cook, and the realty to his mother, Julia F. Cook. Charles, who was doing business under the trade name of O. V. Palmer & Co., occupied his mother's store, and was her agent for the purpose of keeping it insured. E. B. Carrigan, a local agent for the Westchester Fire Insurance Company, called on Mr. Cook and solicited his business. Cook told him to write $500 on the goods and $1,000 on the building. A few days later, four policies enclosed in an envelope were handed to Cook, who, without reading or examining them, put them in his safe and did not again see them until after the loss of the insured property. The cost of insuring the store-building was charged to Mrs. Cook's account by her son at the time the policy was issued. The premium is still retained by the company and there has been, so far as the record shows, no offer to pay it back. All the policies were written in favor of O. V. Palmer & Co. Payment of the one covering the store-building was refused on the ground that the owner of the property had not been insured. This action to reform the policy was instituted by Mrs. Cook against the company, and resulted in a finding that the contract did not express the real intention of the parties, and in a decree rectifying and enforcing it.

Counsel for appellant insist that the judgment should be reversed because there is no clear proof that the policy was issued to O. V. Palmer & Co. in consequence of a mutual mistake. The authority of the court to grant the relief prayed for, if the evidence is sufficient, is conceded. The rule governing this class of actions is well settled; it is established in this state by repeated adjudications. In *Slobodisky v. Phenix Ins. Co.*, 52 Nebr., 395, it is tersely and accurately stated as follows: "In order to authorize the reformation of a written contract it must be made to appear what the actual contract between the parties was; that the written contract exhibited does not express the

13

contract made; and these facts must be established by clear, convincing and satisfactory evidence." Having unreservedly accepted appellant's view of the law, let us now apply it to the facts and see whether the trial court gave effect to the intention of Carrigan and Cook. The intention of the agents was, of course, the intention of their principals. If the minds of the agents came together upon the same proposition, then there was a valid and enforceable contract between the plaintiff and defendant; and if such contract is not properly evidenced by the policy, that instrument should be reformed and made to speak the truth.

In addition to the facts already stated, it appears that Mrs. Cook was the fee owner of the real estate insured; that her title was of record; that Charles intended to insure it for his mother's benefit and supposed, until after the fire, that the policy was issued to her, and in her name. It further appears that there was no written application to the company and no representations, written or oral, on the subject of ownership. Mr. Carrigan was called as a witness and testified:

Q. How came you to write this policy in the name of O. V. Palmer & Company?

A. I did not know just who the real owner of the property was, and wrote it up in a hurry, and just wrote it all together. * * *

Q. You thought that Charles Cook or O. V. Palmer & Co. owned the property, when you wrote the policies?

A. Why, I didn't take any particular thought on the subject.

Q. Well, did you think that or not? If you did not, say so.

A. Why, yes. That is the impression I had.

This testimony of the company's agent, it seems to us, shows very clearly that it was his intention to insure the owner of the property. He did not know who the owner was, and did not have any belief or conviction in regard to the matter. He had an impression—an idea without

any adequate basis—that the building was owned by O. V. Palmer & Co., and, being in a hurry, made out the policy in that name without investigation or inquiry. The first answer above quoted leaves no room to doubt that Carrigan's purpose was to insure the real owner and that the policy would have been issued to the plaintiff if her ownership had been known. Our faith in the business morality of underwriters will not permit us to believe, on the evidence in this record, that the defendant issued the policy in suit intending that its validity should depend upon the correctness of a mere conjecture. A more reasonable deduction, and one more creditable to the company, is that it was acting in good faith; that it intended to give a consideration for the premium it received, and that its primary purpose was not to insure O. V. Palmer & Co., but rather to indemnify the holder of the title, the person having an insurable interest in the property. We think the trial court was entirely justified in finding that the insurer intended to deliver a binding and effective contract by insuring the owner of the building. The case is quite like *German Fire Ins. Co. v. Gueck*, 130 Ill., 345, in which a decree reforming a fire policy was sustained. The judgment appealed from is

AFFIRMED.