## NIAGARA FIRE INSURANCE COMPANY *v.* JORDAN.

Where, on oral application for a policy of insurance to indemnify the applicant against loss by fire for the period of one year, the proper agent of the insurer agrees to issue to the applicant a policy of insurance as contracted for, but by mistake of the insurer's agent another's name is inadvertently inserted therein as the insured, and the policy is delivered to the applicant by the insurer, who collects the premium, and the applicant retains the policy without discovering the mistake until after sustaining a loss by fire nearly three months thereafter, equity will reform the policy so as to make it accord with the oral agreement between the parties.

JUNE 23, 1910.

Equitable petition. Before Judge Gilbert. Muscogee superior court. February 1, 1910.

B. B. Jordan filed suit against the Niagara Fire Insurance Company, to reform a policy of insurance issued by the defendant to Jordan Brothers, on the ground that it purported to insure the interest of Jordan Brothers in certain property when it should have insured the interest of plaintiff, who had been a member of the firm of Jordan Brothers but had purchased the interest of his partner at the time of the issuance of the policy of insurance; and to enforce the payment of this policy. The court overruled the defendant's demurrer, and the exception is to this judgment. Omitting formal allegations, the petition as amended stated the cause of action as follows:

"Your petitioner shows that on the 7th day of May, 1907, the said defendant did contract and enter into a contract of insurance with your petitioner to insure a stock of goods of petitioner, bearing the number 17,748, which said policy of insurance was issued by its local agent, James W. Woodruff. Said policy above described being for the sum of five hundred and no/100 ($500) dollars, covering a stock of merchandise located at No. 1127 Broad street in the city of Columbus, said State and county, on a general stock of merchandise consisting of boots, shoes, slippers, overshoes, and all other merchandise not more hazardous and usual to the trade.

"Petitioner shows that at the date last above mentioned and at the time he contracted with said defendant he was the sole and exclusive owner of the property so insured, and that his ownership in said property did not change from said date of insurance until the 8th day of Feb., 1908. Petitioner shows that said contract was made by and with your petitioner 'B. B. Jordan' in his own right, and by and through a mistake on the part of said company's agent and this petitioner, which mistake was made by the agent drafting said insurance contract, instead of putting the name of petitioner in said contract as being insured, the name 'Jordan Bros.' was put in said contract by the said draftsman, which mistake originated by and through the fact that a firm by the name of 'Jordan Bros.' of which petitioner was formerly a member, did business in the same storehouse prior to Dec. 6th, 1906. Said mistake was a mutual mistake in that it was overlooked by your petitioner until

Feb. 8th, 1908, at which time a loss occurred under said policy. Your petitioner shows that on the 6th day of December, 1906, the said firm of Jordan Bros. was dissolved, and that notices of dissolution were duly published in the newspapers published in Columbus, in said State and county, and that your petitioner, by virtue of said dissolution, succeeded Jordan Bros. and became the sole and exclusive owner of the property heretofore owned by Jordan Bros., located in the storehouse heretofore described. Your petitioner shows further that on the 19th day of November, 1907, he was the sole and exclusive owner of the property covered by policy 12,748, issued by defendant, and that the said defendant, at the time of the issuance of said policy, well knew that the said firm of Jordan Bros. had been dissolved and your petitioner had succeeded it, and that the making of the said policy payable to Jordan Bros., instead of B. B. Jordan, was caused through a' clerical error or inadvertence or mistake on the part of the defendant, through its agent, and through no fault of petitioner.

"That on the 19th day of November, 1907, in consideration of the payment by the said B. B. Jordan to the defendant of the sum of seven and 75/100 dollars as premium paid to defendant, defendant did issue its certain policy of insurance in writing, insuring said property above mentioned against loss or damage to petitioner, by fire, from the 19th day of November, 1907, at noon, to the 19th day of November, 1908, at noon, a copy of which policy is hereto attached and made a part hereof, marked exhibit "A," and to which leave of reference is prayed.

"That on the 8th day of February, 1908, said stock of goods above described in said policy of insurance was destroyed by fire, without the fault of your petitioner; and the loss to your petitioner occasioned thereby was the sum of five hundred and no/100 dollars, said insurance policy covering said stock and loss to the amount of five hundred and no/100 dollars.

"Petitioner gave to the defendant immediate notice of loss and otherwise performed all of the duties imposed upon him by the terms of said policy.

"Petitioner, within the time prescribed by said policy, made demand upon defendant for the amount due upon said policy; and although said defendant had agreed and undertaken to pay such loss as might occur under said policy, the said defendant did in

writing deny any and all liability to your petitioner under said policy, thereby waiving proof of loss. Nevertheless petitioner in good faith did forward and furnish to defendant proof of loss within the time prescribed in said policy, and that the said defendant still failed to pay said amount, or any part of said loss.

"Petitioner shows that he has now fully complied with all of the terms and conditions of the policy that it was incumbent upon him to do; but that the said defendant wholly and totally fails and refuses to comply with its part of the contract and to pay your petitioner the loss sustained, or any part thereof."

The prayers were, "(a) That said policy, No. 12748, issued by defendant, be reformed and the mistake of inserting 'Jordan Bros.' be corrected and the name B. B. Jordan be inserted as the assured, so that the policy shall read 'does insure B. B. Jordan,' instead of 'does insure Jordan Bros.' (b) That he have judgment against said defendant for the sum of five hundred and no/100 dollars, with interest thereon since the 8th day of April, 1908, at the rate of seven per cent. per annum, with costs of suit," and for general relief. A copy of the policy was attached.

The substance of the demurrers was: that no cause of action was alleged; that, it appearing from the petition that the policy was a renewal of a former policy issued to Jordan Brothers, and no notice of a change of ownership in the property insured from Jordan Brothers to B. B. Jordan having been alleged to have been given to the defendant, the petition failed to set up any reason which would authorize a reformation of the contract of insurance by a change of the parties; that no mutual mistake is alleged; that the petition shows the plaintiff guilty of laches in discovering the alleged mistake; and that the petition fails to allege any oral or written agreement to issue the policy to B. B. Jordan.

*C. E. Battle* and *Howell Hollis,* for plaintiff in error.

*Carson & McCutchen* and *Bowden & Goldstein,* contra.

EVANS, P. J. (After stating the facts.) The substance of the petition is, that the plaintiff orally applied to the proper agent of the defendant for a policy of insurance on his stock of merchandise, indemnifying him against loss by fire, and the defendant's agent orally agreed to issue to him the policy applied for, but, by the inadvertence of the agent in preparing the policy, the name of the late firm of Jordan Brothers was substituted for that of the plain-

tiff. The merchandise of the plaintiff was destroyed by fire during the period of time covered by the policy; and the plaintiff seeks a reformation of the policy and a judgment for the loss sustained by the fire according to the terms of the policy as reformed. It is well settled that a written contract which misstates the terms of an oral agreement on which it is founded may be reformed. The agent's inadvertent substitution of Jordan Brothers for the insured under the circumstances alleged in the petition, and the plaintiff's acceptance of the policy in reliance on the agent to issue it according to his engagement, make a case of mutual mistake relievable in equity. German Fire Ins. Co. v. Gueck, 130 Ill. 345 (6 L. R. A. 835, 23 N. E. 112) ; Cook v. Westchester Fire Ins Co., 60 Neb. 127 (82 N. W. 315) ; Jamison v. State Ins. Co., 85 Iowa, 329 (52 N. W. 185) ; Taylor v. Glens Falls Fire Ins. Co., 44 Fla. 273 (32 So. 887).

The mistake in the policy was not discovered until after the fire, which occurred a little less than three months after the policy was issued. It is contended that the plaintiff's failure to inspect the policy which was in his possession for nearly three months amounts to such laches and negligence on his part as to preclude any right of reformation of the policy. The trend of authority is that a mere failure of the insured to read his policy does not amount to such laches as will debar him from having such policy reformed for mistake therein. Fitchner v. Fidelity Mutual Fire Ass'n, 103 Iowa, 276 (72 N. W. 530) ; Taylor v. Glens Falls Fire Ins. Co., supra; Phœnix Ins. Co. v. Gurnee, 1 Paige, 278 (19 Am. D. 431). A policy of insurance is issued by the insurer and signed by him or his agent; it is not contemplated that the insured shall sign it. In the insurer's promise to deliver an accurate policy, according to his oral agreement with the insured, the insured has a just expectation that there will be no designed variance. A man should not be permitted for his pecuniary advantage to impute it to another as gross negligence that the other trusted to his fidelity to his promise. Palmer v. Hartford Fire Ins. Co., 54 Conn. 488 (9 Atl. 248). The case is quite different from those instances where a man, who has negligently signed a contract, endeavors to be relieved of its obligation by setting up his own negligence. The fact that the policy as actually made out was in the plaintiff's hands for nearly three months, and until after the fire occurred, is a cir-

cumstance to be weighed by the jury as bearing on the truth of the allegation that the policy did not pursue the oral contract. But. as was said in Bidwell v. Astor Ins. Co., 16 N. Y. 266, "There is no rule of law which fixes the period within which a man may discover that a writing does not express the contract which he supposed it to contain, and which bars him of relief for delay in asserting his rights short of the period fixed by the statute of limitations."

We are cited to the case of *Thompson* v. *Southern Mutual Insurance Company,* 90 Ga. 78 (15 S. E. 652), as authority for the proposition that the plaintiff was guilty of such gross laches in discovering the mistake in the policy that he is not entitled to the equitable relief of reformation. In that case it appeared that a policy of insurance on a dwelling-house, with a vacancy clause in it of thirty days, had been renewed for several years from year to year under a general request made by the insured of the agent of the insurance company, each renewal having been made by the delivery of a receipt for the premium without the issuance of a new policy; and the agent, acting on the same general request, having in the last transaction discontinued this mode of renewal, the company in the meantime having adopted a new form of policy with a vacancy clause limited to ten days, it was held that it was not a fraud against the insured, against which equity will relieve, that the agent, without giving any notice to the insured, delivered to him a policy in the new form, without informing him of the change, this policy having been thereafter retained by the insured for four months without reading it, and he never having read it until after the destruction of the premises by fire. In that case there was no pretense that there was any mutual mistake as to form or contents of the policy, but the holder of the policy sought to reform it into one like the company had previously issued to him, basing his right to relief upon an inference of fraud from the pleaded facts. The court ruled that inasmuch as the means of preventing a false inference was within the hands of the holder of the policy, he ought to have used them, and that the facts alleged did not make a case of fraud relievable in equity.

In all other respects the petition set forth a cause of action, and the demurrer was properly overruled.

*Judgment affirmed. All the Justices concur.*