[Civil No. 1986.    Filed May 26, 1922.]

[206 Pac. 1081.]

## NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, a Corporation, Appellant, v. T. F. CHAMBERS, Appellee.

1. REFORMATION OF INSTRUMENTS—EVIDENCE HELD TO JUSTIFY FINDING THAT INFORMATION CONTAINED IN POLICY INSURING AUTOMOBILE WAS GAINED FROM INSURER'S INSPECTION.—Where it was found upon conflicting, though ample, testimony that insured's agent knew neither the factory number of the automobile insured nor whether it was purchased by insured new or second-hand, and its cost price was placed in the policy at $3,500 instead of $2,900, as stated by the agent, although insured's agent told the insurance agent that it was a 1916 model, *held* that the court was justified in finding that the information contained in the policy was not furnished by insured's agent, but was gained by inspection of the car by insurer's agent or someone else for him.

2. INSURANCE—COURT HELD JUSTIFIED IN HOLDING ERRORS IN POLICY WERE THROUGH MISTAKE, INADVERTENCE OR OVERSIGHT OF THE PARTIES.—Where insured's agent told an insurance agent where an automobile was which was to be insured, and requested that he examine it and insure it for all it would carry, and the agent wrote a policy describing the car as new, whereas it was second-hand, and describing it as a 1916 model, whereas it was a 1915 model, *held*, that the court was justified in holding that the two items were placed in the policy through mistake, inadvertence or oversight of insurer and insured and in reforming the policy.

2. On the question of right to reform insurance policy for mistake of soliciting agent, see notes in 65 Am. St. Rep. 514; 20 Ann. Cas. 365; 11 L. R. A. (N. S.) 357.

3. Reformation of Instruments—Evidence of Mistake in Insurance Contract must Entirely Satisfy the Court.—While reformation of insurance contract must not necessarily be denied because there is a conflict of testimony, yet upon all the proofs, taking the facts as they appear to the court, a mutual mistake of the parties must be established in a clear, convincing manner.

4. Reformation of Instruments—Where It is not Shown Whether Errors in Policy Sought to be Reformed for Mistake Arose from Mistake or Fraud, the Former will be Presumed, in Support of the Complaint.—In an action to reform an insurance policy for mistake and to collect thereon for loss, an objection that errors in the policy were from fraud of insurer's agent rather than mere mistake, and that insured could not avail himself thereof, because he had not asked for reformation on the ground of fraud, is not well taken where it does not appear whether the errors were willful or inadvertent.

5. Fraud not Presumed.—Fraud is never presumed, but must be affirmatively proved.

6. Insurance — Where Insurer Ascertained Matters and Placed Them in Policy as Warranties, They are Waived as Such.— Where incorrect statements or facts appearing in a policy of insurance as representations or warranties are not furnished by the insured or his agent, but are ascertained by the insurer or his representative from some other source and placed there by him, they are waived as such, notwithstanding their designation as warranties.

7. Insurance—Insured may be Relieved of Duty to Read Policy on Presumption That Policy Accords With Application.— Insured can rely on the presumption that the policy he receives is in accordance with his application, whether oral or written, so that insured by failure to observe misstatements in the warranties placed by insurer's agent in policy insuring an automobile does not avoid the policy on theory of *caveat emptor.*

APPEAL from a judgment of the Superior Court of the County of Cochise. A. M. Sames, Judge. Affirmed.

Messrs. Wright & Darnell, for Appellant.

Messrs. Manatt & Stephenson, for Appellee.

McALISTER, J.—This is an action upon a policy of insurance issued by the Northwestern National Insurance Company of Milwaukee, Wisconsin, to appel-

lee, plaintiff below, insuring him in the sum of $1,500 against loss or damage by fire or theft of an automobile in consideration of certain warranties and the payment of a premium of $48.75. From a judgment in favor of appellee for $1,150 principal, fifteen per cent penalty thereon, attorney's fees and costs, and a denial of its motion for a new trial, defendant appeals.

It appears from the complaint that the car was stolen on the night of September 8, 1920, while parked on Ninth Street in the city of Douglas, driven several miles into the country, and burned, resulting in its total destruction with the exception of two tires valued at $100; that the contract of insurance was made and entered into for the purpose of insuring appellee against the loss of Winton touring car No. 17070, a second-hand car of the 1915 model, but that, as reduced to writing, the policy, by mutual mistake, inadvertence and oversight of the parties, described said car in clause 3 of the subsection denominated "Warranties" as a 1916 model, and in clause 4 thereof as a new car, and the prayer is that said policy of insurance be reformed to read as the parties made it and as so reformed enforced. The answer alleges that, appellee's agent, one Borrego, who applied for the insurance, informed appellant's agent that it was a new car and purchased by appellee as such in 1916, and that, acting solely upon this information, it was determined that the sum of $1,500 could be written thereon, but that, if it had been represented to appellant at the time the application was made that it was a 1915 model and a used car when purchased by appellee, appellant corporation would not have allowed insurance to the extent of $1,500 placed thereon.

The case was tried to the court without a jury, and written findings of fact, full and complete, filed.

The errors assigned challenge the sufficiency of the evidence to substantiate the complaint, the findings, the conclusions of law, and the judgment.

It appears from the testimony of appellee that he drove the car from Douglas to Tucson in the summer of 1920 for the purpose of selling or trading it for a house and lot, but, being unable to do either, he returned home July 29th, leaving the car in a Tucson garage to be disposed of, if possible, by one A. F. Borrego, a real estate dealer there, whom he also requested to have it insured for $1,500 or as much as it would carry; that the policy was issued July 30, 1920, and forwarded to him at his home in Douglas, where it was received, placed in his desk without being examined or even read, and his check in payment of the premium thereon sent to L. Roca.

Borrego testified that he spoke to L. Roca, Tucson agent of appellant, a day or so after appellee left and told him that appellee wanted insurance on his car, which was then at the Holliday Garage; that Roca inquired how much he wanted, and was told $1,500, or as much as the car would carry; that he had no further talk with Roca than to tell him what appellee had said, that the car was a 1916 model and cost something like $2,900; that he did not tell him the number of the car nor whether it was new or second-hand because these facts were unknown to him; that Roca was a man about five feet ten and one-half inches tall and of Mexican or Spanish nativity. Roca, however, testified that neither he nor anyone else for him made an examination of the car, but that Borrego gave him its number and told him that it was a 1916 model and was purchased new by appellee. It appears further from his testimony that at the time of the issuance of the policy he had in his office a record published by an automobile publishing company describing all cars, and that by an examination of it he could have

ascertained whether this 'car was a 1915 or 1916 model. A witness by the name of Tracy residing in Tucson testified that at the request of appellee, whom he had known for five or six years, he went to the garage occasionally to look at the car, and on the 29th or 30th of July, 1920, passed there and saw two men examining the car, but did not know them; one was tall and looked like a Mexican, and the other short, though he did not pay close attention to them; that one appeared to be examining the engine with a pencil and paper, but he did not stop to watch them as he was merely walking along and looked that way; that Borrego was not one of them.

The court accepted the testimony in behalf of appellee and found that Borrego requested a personal examination of the car by Roca, that the latter complied therewith, either personally or through another, and that in so doing he obtained the information upon which the policy was written. The first three assignments are based on the insufficiency of the evidence to uphold these findings, but we are unable to see wherein they are not supported by the evidence. It was found upon conflicting, though ample, testimony that Borrego knew neither the factory number of the car nor whether it was purchased by appellee new or second-hand, and in addition to this its cost price was placed in the policy at $3,500, instead of $2,900, as stated by him. Though Borrego told Roca it was a 1916 model, yet the court was justified in view of the foregoing in finding that the information contained in the policy was not furnished by Borrego, but was gained from an inspection of the car by Roca or someone else for him. Borrego did not have the information, and necessarily could not have supplied it.

The finding that the errors in the policy which are complained of were due to "mutual mistake, inadvertence and oversight of the plaintiff and defendant"

is objected to as wholly unsupported by the evidence. Borrego, as agent of appellee, told Roca, when he applied for the insurance, where the car could be found, and requested him to examine it and to insure it for all it would carry. By this action appellee furnished appellant, or placed within its power to ascertain correctly for itself, the information it was necessary for the policy to contain. Such action clearly negatives any intention or attempt on the part of appellee's agent to mislead Roca or misrepresent the facts to him, or do anything other than furnish correctly the data required for procuring a policy of insurance on this particular automobile—Winton touring car No. 17070, model 1915, then in a garage at Tucson. No statement as to whether appellee purchased the car new or second-hand was made by him or his agent because the former saw Roca for the first time at the trial, and there was no communication between them on the subject, and the latter had no knowledge concerning it. It is clear that appellee wanted this particular car and no other insured, and that appellant's agent, Roca, intended to insure it and wrote a policy covering it, and, having been in a position to ascertain correctly the information upon which the policy was based, it must be assumed that he obtained it accurately, and naturally it should have been inserted that way in the policy, but instead he entered part of it erroneously—the figures "1916" to describe the model of the car, and the word "new" its condition when purchased. It is true that whether it was new or second-hand when purchased by appellee was unknown to him, since this could not have been ascertained by an inspection of it, but the fact that it was not then a new car must have appeared to him, because, according to the evidence, it had been driven five years or longer. And, while this was not the fact required, yet it was sufficient to cause Roca to

investigate further before inserting in the policy a statement the truth of which he did not know, but could have ascertained by communicating with appellee at Douglas, or having his agent, Borrego, do so. Having placed it in the policy regardless of its correctness, appellant cannot be heard to say, contrary to the fact, that it was misrepresented to it. There is nothing in the record disclosing any intentional error or any lack of an evident purpose on the part of both appellant and appellee to insure this particular car. If anything having such an effect had been omitted from or inserted in the policy, except upon the fraudulent design of one of the parties to it, it would have been considered mutual and resulted in defeating the purpose of both. Hence the court, being entirely convinced on this disputed question of fact, was justified in acting upon the conviction and holding that these two items were placed in the policy through the mistake, inadvertence or oversight of appellant and appellee. *Leitensdorfer* v. *Delphy*, 15 Mo. 160, 55 Am. Dec. 137.

The rule which should guide a court in determining whether a mistake has been made by the parties to an instrument is clearly stated in the following excerpt from *Hutchinson* v. *Ainsworth*, 73 Cal. 452, 2 Am. St. Rep. 823, 15 Pac. 82:

" 'The evidence, it is true, must be clear and convincing, making out the mistake to the entire satisfaction of the court, and not loose, equivocal, or contradictory, leaving the mistake open to doubt.' The conclusion from the sum of all the authorities on the subject is, not that relief must necessarily be denied because there is a conflict of testimony, for that would result in a denial of justice in some of the plainest cases calling for such relief, but that upon all the proofs, taking the facts as they appear to the court after eliminating testimony unworthy of credence, or based upon mistake or uncertainty, as in other cases, the mistake must be established in a clear

and convincing manner, and to the entire satisfaction of the court.''

But it is urged that, if Roca was the cause of these errors being placed in the policy, it was, under the evidence, a fraud on his part rather than a mere mistake, and cannot avail appellee, since he has not asked for a reformation on this ground. It is clear that Roca was responsible for the error, but it does not appear whether he committed it willfully and intentionally, for the specific purpose of injuring the insured, or inadvertently, and where one of two faults must be imputed, but the evidence fails to disclose which it should be, that fault which is free from moral turpitude will be attributed, because ''fraud is never presumed, but must be affirmatively proved.'' 20 Cyc. 108. The inadvertent insertion of ''1916'' for ''1915'' and of ''new'' for ''second-hand'' under the circumstances alleged and found to be true and ''the plaintiff's acceptance of the policy in reliance on the agent to issue it according to his engagement make a case of mutual mistake relievable in equity.'' *Niagara Fire Ins. Co.* v. *Jordan,* 134 Ga. 667, 20 Ann. Cas. 363, 68 S. E. 611.

It is contended that, inasmuch as these errors appear in the policy as ''warranties,'' their effect is to avoid the policy. This might be true perhaps if they had been inserted upon the representations of the insured or someone acting for him, but where incorrect statements or facts appearing in a policy of insurance as representations or warranties were not furnished by the insured or his agent, but ascertained by the insurer or his representative from some other source and placed there by him, they are waived as such, notwithstanding their designation. *Wright* v. *Fire Ins. Assn. of London,* 12 Mont. 474, 19 L. R. A. 211, 31 Pac. 87; *Aetna Ins. Co.* v. *Holcomb* (Tex. Civ. App.), 31 S. W. 1086; *German Mutual Ins. Co.* v. *Niewedde,*

11 Ind. App. 624, 39 N. E. 534; *Bennett* v. *Agricultural Ins. Co.*, 106 N. Y. 243, 12 N. E. 609; *Roth* v. *City Ins. Co.*, Fed. Cas. No. 12,084.

It is urged that the negligence of appellee in failing to read the policy upon receiving it and have the errors in it corrected within a reasonable time thereafter precludes him from recovering under the particular facts of this case. There are many authorities holding such to be the duty of the insured upon the theory that the principle of *caveat emptor* applies with as much rigidity to the sale of an insurance policy as to the sale of an article of merchandise. To this effect are the following cited by appellant: *Bostwick* v. *Mutual Life Ins. Co. of New York*, 116 Wis. 392, 67 L. R. A. 705, 89 N. W. 538, 92 N. W. 246; *Susquehanna Mutual Fire Ins. Co.* v. *Swank*, 102 Pa. 17; and *New York Life Ins. Co.* v. *McMaster*, 87 Fed. 63, 30 C. C. A. 532. But by the weight of authority, and we think the better rule, the insured has the right to rely on the presumption that the policy he receives is in accordance with his application, whether oral or written. *Niagara Fire Ins. Co.* v. *Jordan*, above; *Medley* v. *German Alliance Ins. Co.*, 55 W. Va. 342, 2 Ann. Cas. 99, 47 S. E. 101; *McElroy* v. *British America Assur. Co.*, 94 Fed. 990, 136 C. C. A. 615; *Delaware Ins. Co.* v. *Hill* (Tex. Civ. App ), 127 S. W. 283; *German Fire Ins. Co.* v. *Gueck*, 130 Ill. 345, 6 L. R. A. 835, 23 N. E. 112; *Barnes* v. *Hekla Fire Ins. Co.*, 75 Iowa, 11, 9 Am. St. Rep. 450, 39 N. W. 122; *Gristock* v. *Royal Ins. Co.*, 87 Mich. 428, 49 N. W. 634; *German Amer. Ins. Co.* v. *Darrin*, 80 Kan. 578, 103 Pac. 87; *Hay* v. *Star Fire Ins. Co.*, 77 N. Y. 235, 33 Am. Rep. 607; *Union Ins. Co.* v. *Wilkinson*, 13 Wall. 222, 20 L. Ed. 617 (see, also, Rose's U. S. Notes). Borrego's statement to Roca, after telling him where the car was, that he could get the facts required from an inspection of it, which he did, was

the same as furnishing him personally the data such an examination would have disclosed, and, when appellee received the policy through the mail from Roca, he placed it in his desk without reading it and paid the premium, never thinking that it did not contain a proper description of his car. Nothing occurred then or later which could have charged him with notice of this deficiency.

"The plaintiff relied on him," as said in *Barnes* v. *Hekla Fire Ins. Co.*, above, "to . . . write the policy in accordance with the contract [facts disclosed by an examination of the car], and we think he had a right to do so; and, because he failed to read the policy and discover the omission therein, and its terms and conditions, he is not guilty of such negligence as will bar him of relief, as the defendant contends."

Finding no error, the judgment of the lower court is affirmed.

ROSS, C. J., and FLANIGAN, J., concur.