[No. 4051. Filed October 2, 1939.]

[94 Pac. (2d) 437.]

## HOME OWNERS' LOAN CORPORATION, a Corporation, Appellant, v. THE BANK OF ARIZONA, a Corporation, Appellee.

148

M. L. Ollerton and Patterson & Eastvold, for Appellant.

Favour & Baker and A. M. Crawford, for Appellee, and Ellinwood & Ross and Everett M. Ross, Associate Counsel.

ROSS, C. J.—This action was brought by The Bank of Arizona as plaintiff to compel an exchange of deeds on the ground of mutual mistake, occurring in the manner hereinafter stated. It is against the personal

representative of Frank C. and A. R. Alatorre, husband and wife, both deceased, and the Home Owners' Loan Corporation.

The facts as alleged in the complaint are, in substance, as follows: On December 31, 1931, the Alatorres were the owners of lots 33, 34, 35, 36 and 37 in block 9 of the Town of Jerome, Yavapai County, subject to an overdue mortgage for $5,812.90 held by The Bank of Arizona. On that date, in satisfaction of the mortgage, the Alatorres conveyed to the bank such real estate with an agreement that in the event they should pay the bank the amount then due at any time prior to a resale, the bank would reconvey the property to them. The lots had houses on them, particularly lots 37 and 33, and the Alatorres occupied the house on lot 33. They requested the bank to reconvey to them the house and lot on which they lived, and offered to pay or deliver to the bank the amount of bonds the HOLC would loan on said property in satisfaction of their obligation to the bank. The bank agreed to re-deed to the Alatorres the house occupied by them, but the deed which was later executed by the bank, instead of being for lot 33, was, through the fault of the bank or the Alatorres or the scrivener, for lot 37. The deed to the Alatorres, it is alleged, should have been of lot 33, and the mortgage to the HOLC should have been of lot 33; that the Alatorres intended the deed from the bank to them should be for lot 33 and the HOLC intended that its mortgage should be against said lot 33.

It is alleged that the HOLC's agent inspected lot 33 and the improvements thereon and appraised such lot for the purposes of the loan, and that the HOLC believed that such lot and improvements was the property which was being mortgaged to it; that the Alatorres thought they were mortgaging said lot 33, and that the bank believed it had deeded said lot to the

Alatorres; that the transaction in which the bank deeded to the Alatorres lot 37 instead of lot 33 took place on February 27, 1934, and the transaction in which the Alatorres mortgaged lot 37 instead of lot 33 took place on April 20, 1934. It is alleged that under date of February 2, 1937, the HOLC acquired title to lot 37 through foreclosure and sale under its mortgage; that the deeding of lot 37 to the Alatorres by the bank was a mistake, as was also the mortgaging of such lot to the HOLC; that all the parties believed they were dealing with lot 33, and that the mistake was mutual.

Before bringing suit, appellee tendered a deed of lot 33 to the HOLC and demanded that the HOLC re-deed lot 37 to it. The relief asked is that an exchange of deeds be decreed, each party giving to the other good title with taxes paid to date of exchange.

Both the Alatorres had died in the meantime and their sole heir, Cuquita A. Rodriguez, was appointed their administratrix. Such personal representative, although served with summons, filed no answer to the complaint and judgment was entered against her in her representative capacity as also as sole heir.

The HOLC's defense consists of a special and general demurrer and an answer. The special demurrer is on the ground that two causes of action are improperly united, and the general demurrer is that the complaint does not state facts sufficient to constitute a cause of action against the defendant. The answer is one of denials of the material allegations of the complaint, and also an affirmation:

"That if there was any such mutual mistake as alleged in plaintiff's complaint, or any mistake at all herein plaintiff has long since waived the same and ratified its said deed and acts by which, in 1934 as herein stated, it conveyed the above described property to said Frank Alatorre and A. R. Alatorre, his wife. That plaintiff knew, or might by the exercise

of reasonable diligence have known, all the facts relative to such mutual mistake, if any, in 1934 at the time plaintiff gave said deed to said Frank Alatorre and A. R. Alatorre, his wife. That plaintiff is guilty of negligence in not having asserted its present claims at once after execution of said deed.''

In 1937 the HOLC foreclosed its mortgage on lot 37 and in due course, on August 24, 1937, the period of redemption having expired, received a sheriff's deed thereto. Thereafter, on December 23, 1937, this suit was filed.

Before the HOLC would let the Alatorres have the loan and deliver its bonds to the bank, it required that the title thereto be guaranteed and, accordingly, the bank secured such guaranty from the Guarantee Title & Trust Company, an Arizona corporation.

There also appears in the record a quitclaim deed of lot 33 from the United Verde Extension Mining Company to the Alatorres reciting generally that its acceptance by the Alatorres would be a surrender of certain lateral support. The trial court held that, since the Alatorres deraigned title from one G. W. Hull, this deed would not affect their title. The evidence does not show under what circumstances such deed was executed.

The demurrers were overruled and after a trial the court rendered judgment in favor of the plaintiff and directed defendant to convey to plaintiff lot 37 with good and sufficient title and taxes paid up to and including the year 1937, and that plaintiff convey to defendant lot 33 and the southerly six feet of lot 34 adjoining lot 33, with good and sufficient title and taxes paid for the same period.

The defendant has appealed and by its assignments has raised certain propositions of law which it contends require that the judgment of the lower court be reversed.

We will not undertake to follow the appellant's assignments for the reason that we think they may be considered and disposed of under a few general headings.

 The court's action in overruling the special demurrer is assigned as error. We cannot see wherein the complaint states, as claimed, two causes of action. If it does anything, it states one cause of action against two defendants, the Alatorres and the HOLC. It should be remembered that the very nature of the transaction involved three parties; the home owner, the owner of the encumbrance on the home, and the HOLC, from which it was expected to get a loan. We take notice the latter is a relief agency organized under the authority of the Home Owners' Loan Act (48 Stat. 128; 12 U. S. C. A., § 1461 et seq.) to help distressed home owners in saving their homes. *Chaves County Building & Loan Assn.* v. *Hodges,* 40 N. M. 326, 59 Pac. (2d) 671. The arrangement required that the owner of the encumbrance agree with the home owner and the HOLC that it would accept the latter's bonds, in the amount it was willing to advance to the home owner to free his home from debt. In this arrangement there must be a meeting of the minds of the three parties concerned as to the property to be saved for the home owner, the amount of the HOLC's bonds necessary for that purpose, and other minor details.

The mistake alleged touches the whole transaction, beginning with the bank's deed to the Alatorres and ending with the mortgage to the HOLC, and to settle the matter it was necessary that all parties to the transaction be made parties to the suit. The complaint states but one cause of action.

 The court's action in overruling the general demurrer is also assigned. This involves the sufficiency of the facts alleged to constitute a ground for

the exchange of deeds as prayed for. The basis for such exchange is that the parties by common mistake, free of fraud and deceit, dealt with lot 37 instead of lot 33 as intended by all of them. The action is highly equitable in its nature, its purpose being to see, if possible, that all parties give and get exactly what they agreed to give and receive. It is essential, therefore, that the terms of the agreement, whether written or oral, should be alleged in the complaint, and also how such terms were departed from in the execution of the agreement. If the facts alleged clearly show the parties by mutual mistake in the performance of their agreement departed from its terms by misdescribing the subject matter, in the absence of superior equities pointing in a different direction, the complaint is sufficient. A mutual mistake is defined in 53 Corpus Juris, 941, section 59, as follows:

"Where mistake alone is relied on as a ground for the reformation of an instrument, the mistake must be a mutual mistake. It must appear that by reason of the mistake both have done what neither intended, that is the contract must be written in terms which violate the understanding of both parties, and the mistake must be in reference to the same matter. But where all the proper elements exist, that is a valid agreement between the parties and an instrument failing adequately to express the same, because of a material mistake which is shown to be mutual, reformation is authorized. . . . "

An inspection of the complaint quite clearly shows that it contains all the elements required under the law to make out a cause of action for reformation of the deed and mortgage or for the exchange of deeds for mutual mistake.

■ One hundred and forty-five pages of appellant's brief are devoted to its contention that the evidence is not "clear and convincing" that a mutual

mistake was made. The rule in this jurisdiction, and most others we believe, is that a party asking relief from a mutual mistake in the performance of a contract must show by clear and convincing evidence that there was such a mistake. *Northwestern Nat. Ins. Co. of Milwaukee, Wis.,* v. *Chambers,* 24 Ariz. 86, 206 Pac. 1081; *Gingery* v. *Romeris,* 24 Ariz. 267, 208 Pac. 1024. This calls for an examination of the evidence.

The agent who had charge of the matter for the bank testified that it was the intention of the bank by its deed to release its lien on lot 33, that being the home lot. The application by the Alatorres to the HOLC for the loan described the property as lot 37, block 9 and the address of the property as "467 Rich Street" and as "the home of the undersigned" (Frank Alatorre). The evidence was uncontroverted that lot 33 is at 467 Rich Street and that such lot was the home property of the Alatorres. Accompanying this application was a diagram showing the property intended was lot 33 and not lot 37. The HOLC had its regular appraiser examine and appraise the property. In its letter of instruction to such appraiser it described the property as follows:

"Lot No. thirty seven (37) Block nine (9) Town of Jerome, Yavapai County, Arizona.
"Known as: 467 Rich St., Jerome, Arizona."

The appraiser's report sent to the HOLC's manager was on lot 33. He took photographs of the building on lot 33 and attached them to his report. On the reverse side of one of the photographs appear these words: "Front view of house #467 Rich Street, Jerome, Ariz. (Home of Frank Alatorre.)" and on the reverse side of another of such photographs were these words: "Part front and side view house #467 Rich St. Jerome, Arizona (Home of Frank Alatorre)." Indeed the HOLC admits through its manager that

the only property appraised for the purposes of the loan was lot 33 and the house thereon used and occupied by the Alatorres as their home. The proof is absolute that there was a mutual mistake.

That being true, an action to reform the bank's deed and the Alatorres' mortgage to the appellant was maintainable by any of the interested parties: by the bank because it intended to convey lot 33 to the Alatorres; by the Alatorres because they intended to mortgage lot 33 to the HOLC, and by the HOLC because it examined and appraised lot 33 for the loan and intended the mortgage to be placed on such lot. The parties knew of the mistake in the early part of 1936 and discussed it, and again in May, 1937, the evidence is that the representatives of the bank and the HOLC talked it over but did nothing.

The parties after the discovery of the mistake had the power and right, if they so chose, to ratify it so as to preclude them from asking a court of equity to correct it. It is not suggested that there was an express ratification by the bank. It is true that delay in seeking a correction after the discovery of a mistake may, if in the meantime conditions have materially changed, defeat an action for reformation. After the discovery, the only change that occurred before the suit for reformation was filed was that the appellant had by foreclosure and sale of lot 37 become the legal owner instead of a holder of an equitable lien thereon. In the foreclosure proceeding the appellant, who was familiar with the mistake, could have asked for reformation of the mortgage and deed and had foreclosure on lot 33. It did not do so. Likewise the bank could have filed suit at any time after the discovery of the mistake and secured a reformation but failed to do so. On the score of delay, they stand on an equal footing. The fact that the appellant has gone to the expense of acquiring title to lot

37 by foreclosure will occasion no financial loss to it because, had its mortgage been on lot 33 as intended, foreclosure would have been necessary for the reason that both mortgagors had died before the mistake was discovered.

If deeds are now exchanged, it will obviate reformation and dispense with foreclosure against lot 33. The appellant cannot therefore claim that the bank is estopped. Appellant has not been injured by reason of the delay and has not been misled to its damage.

▆▆▆▆ Waiver is the intentional relinquishment of a known right. The evidence does not show an express waiver by the bank of its right to have the mistake corrected. If there is such a waiver, it must be inferred from the facts and circumstances. On November 24, 1937, the bank's attorney wrote appellant as follows:

" . . . At one time, on behalf of the Bank, I advised you the Bank would be willing to transfer to you Lot *33* in Block 9, if you were prepared to deed to the Bank Lot *37* in Block 9. You now have the Sheriff's Deed to Lot *37* in Block 9.

"Do you still want to make this exchange, or should The Bank of Arizona go ahead and try to dispose of Lot *33* in Block 9? Kindly advise so that we can close the matter."

This letter certainly manifested a willingness to overlook the mistake and seemed to seek the appellant's concurrence. From the record, appellant apparently paid no attention to the letter.

The case was tried before the court and after hearing all the evidence the court as the trier of the facts concluded that there was no waiver. It was a question of fact for that court, and we cannot say the conclusion reached is not correct under the evidence. 27 R. C. L. 912, sec. 7.

We conclude the evidence fails to show either waiver or estoppel.

 The appellant argues that it was through the bank's gross negligence that the mistake occurred and that for that reason it should not have any relief. The evidence fails to show how the mistake occurred, or whose fault it was. It may have been through the negligence of Alatorre or some employee of the bank. Alatorre may have told the person who prepared his application for the loan that his home was on lot 37. At any rate, no one took the pains to verify the application for the purpose of determining whether it was lot 33 or 37. Whosoever's negligence it was, and it cannot be said that any of the parties was free of negligence, it cannot well be characterized as gross. Mutual mistakes are always the result of some negligence but that will not defeat reformation where it is plain there was no fraud or overreaching by anybody but that all were acting in perfect good faith. If negligence were a defense in this kind of action, there would be no ground for reformation for mistake, as mistakes nearly always presuppose negligence. *Columbian Nat. Life Ins. Co.* v. *Black*, (10 Cir.) 35 Fed. (2d) 571, 71 A. L. R. 128; Pomeroy's Equity Jurisprudence, 3d ed., sec. 856.

 Appellant contends that it is an innocent third party by reason of its purchase of lot 37 at its own foreclosure. This cannot be for it knew of the mistake long before the foreclosure and sale, and the merger of its mortgage into a sheriff's deed did not take from it such knowledge. The rule is stated in *Collins* v. *Heckart*, 127 Or. 34, 270 Pac. 907, 910, as follows:

"The law seems to be well settled that the equitable remedy of reformation will not only be allowed as against original parties and their heirs, but will also

be granted as against the assignees, creditors, purchasers with notice, and all others standing in privy.''

See, also, *Quivey* v. *Baker,* 37 Cal. 465; *Radnor Building & Loan Assn.* v. *Scott,* 277 Pa. 56, 120 Atl. 804.

 The decree is that the bank convey to appellant lot 33 and the southerly six feet of lot 34 along the side of and adjoining said lot 33. It is contended by appellant that the court had no jurisdiction to enter such decree for the reason that the six feet of lot 34 was not an issue of the pleadings. The evidence shows that the Alatorre home extends over six feet onto lot 34. It also shows that it was the intention of the parties to save to Alatorre his home place and that to do that it was necessary to pass to him the title to such six feet. The appellee, at the opening of the trial, orally enlarged its tender of deed to include such six feet so that the grantee would have ''full and complete title to the ground and premises of the Alatorre home.'' The court certainly had the right to require the appellee to do justice as a condition to any relief granted it, and when it was discovered that the Alatorre home covered not only lot 33 but extended over onto lot 34, the court had the power, and it was its duty, to require the bank to convey such portion of lot 34 to the successor of Alatorre. At all events, appellant has no right to complain for, by virtue of such requirement, it obtains title to all the ground the house covers instead of that included in lot 33 only.

 The appellant complains of the court's rulings on the admission of evidence over its objections, such objections being upon various grounds. We do not discuss these assignments for the reason that we assume that if the court received improper evidence it did not consider it but considered only the competent evidence. When a case is tried to the court with-

out a jury, even though improper evidence is offered and received, if the competent evidence is sufficient to support the judgment it will be sustained regardless of the error. We have carefully examined the record and are satisfied that there is ample competent evidence to support the judgment.

We think before the appellee should have a reconveyance of lot 37 it should be required to insure the title of lot 33 and the southerly six feet of lot 34 with some responsible title company approved by the trial court, and the judgment is affirmed with this modification.

The judgment should be that the appellant convey to appellee lot 37, with a good and sufficient title and taxes paid up to the date of exchange of deeds; and that appellee convey to appellant lot 33 and the southerly six feet of lot 34 adjoining lot 33 with a good and sufficient title and taxes paid up to the date of the exchange of deeds, and also an insured title as indicated above. The lower court is directed to enter such judgment, with costs to appellee.

LOCKWOOD and McALISTER, JJ., concur.