## MELROSE v. LOW.
No. 5299.   Decided October 28, 1932.   (15 P. [2d] 319.)

*Irvine, Skeen & Thurman,* of Salt Lake City, and *B. W. Dalton,* of Price, for appellant.

*L. B. Wight,* of Salt Lake City, and *Bosone & Bosone,* of Helper, for respondent.

DILWORTH WOOLLEY, District Judge.

The plaintiff sued the defendant for damages for an alleged breach of a written contract, for an injunction to restrain defendant from engaging in the practice of medicine in Carbon county, Utah, for a period of four years from and after the date of the contract, and for other relief.

The case was tried to the court without a jury. The only damages claimed in the complaint is the sum of $5,000 stipulated for in the contract. Plaintiff does not allege that he has been or will be damaged in any manner or at all by reason of the alleged breach of the contract by defendant. At the close of his case in chief, plaintiff, in open court, waived his claim to damages and to other relief and stood upon his asserted right to injunctive relief. At the conclusion of the trial the court made findings of fact, conclusions of law, and entered judgment thereon dismissing the complaint and denying plaintiff any relief. Plaintiff appeals from the judgment. The appeal is upon the judgment roll alone without a bill of exceptions, so the evidence which the trial court heard is not before us.

The facts in the case by which this court must be controlled upon this appeal are contained in the findings made by the trial court. They are as follows:

That plaintiff and defendant are residents of Carbon county, Utah. That at Helper, Utah, on or about May 31,

1930, plaintiff and defendant entered into a written contract of which the following is a copy:

"Be it known:

"This agreement is entered into between Dr. M. C. Melrose, hereinafter known as Party of the first part, and Dr. F. H. Low, hereinafter known as Party of the Second Part, at Helper, Utah, this 31st day of May in the year of our Lord, 1930, to take effect July 1st, 1930.

"The party of the first part agrees to take in, introduce, and work with party of second part. Further agrees to rent adjoining room, share office equipment and waiting room, office girl and drugs, these to be located in the A. J. Stafford Bldg. The party of the first part shall, after consulting with party of the second part, determine all business policies, engineer all operations and see any or all patients deemed advisable. The management, as stated above, to rest with party of the first part for the first twelve months, then active business and professional policies are to be discussed, acted upon, and carried out by both parties.

"Party of the first part further agrees to give in return for services rendered by party of the second part, 20 per cent of all the moneys derived from the business of the practice of medicine in all of its branches, after all expense of drugs, laundry, office, help and incidental expenses pertaining to the maintaining of the office has been paid. After 12 months the 20% is to be increased to 27% for the next six months; then to 33% for the next six months. For the third year it shall be increased to 40% for the first six months in the fourth year to 45%, and from then on 50%. Even from the start of the contract the party of the second part is to be guaranteed a minimum of three hundred dollars per month.

"Party of the second part agrees to furnish some equipment at first, later to furnish equipment in proportion to his increase in percentage of the income. He further agrees to answer any and all calls, work unselfishly for the advancement of the parties of the agreement. He agrees to rent an adjoining room in the Stafford Building at the rate of $25.00 per month.

"The parties to the agreement both agree to allow at least 14 days each year for vacation. Each to take full responsibility while the other is absent.

"After 33% is reached the increase shall be graduated as stated provided party of second part shall produce and bring into the business that percentage, otherwise according to amount of business produced.

"Party of the second part agrees to pay to party of the first part the sum of five thousand dollars cash as damage, if party of the second

part, of his own free will and unprovoked by party of the first part, severs connections and sets up private practice in Carbon County within four years from the date of contract." (Signed and witnessed.)

That thereafter, on or about July 5, 1930, in accordance with said agreement, plaintiff and defendant together engaged in the practice of medicine in Helper, Carbon county, Utah, and continued together in said practice in said place to and including November 23, 1930. That on November 24, 1930, defendant severed connection with plaintiff and set up in the private practice of medicine at Hedper, Carbon county, Utah. And that, ever since said date, defendant, separate and apart from plaintiff and against the will and without the consent of plaintiff has practiced medicine and is now practicing medicine in Carbon county, Utah. That defendant of his own free will and unprovoked by plaintiff severed said connection with plaintiff and set up in private practice in Carbon county, Utah, within four years from the date of said contract.

There are other findings relative to certain issues raised by a counterclaim which defendant filed in the case, but since they in no wise relate to any matter involved in this appeal, they are omitted from the above statement of the facts.

Appellant's claim is that, as a matter of law, he is entitled under the facts above stated to the injunctive relief prayed for and hence that the judgment must be reversed. His argument is that there is a covenant implied in said contract, which is as much a part of the same as if it had been expressly stated therein, *Cummings* v. *Nielson*, 42 Utah 157, 129 P. 619, on the part of Dr. Low, that he will not engage in the practice of medicine in Carbon county, Utah, during the four-year period commencing with the date of the contract; that respondent has breached, and is continuing to breach, said implied restrictive covenant by engaging in the practice of medicine in said county during said time; that appellant is not entitled to enforce the stipulation for dam-

ages contained in the last paragraph of said contract because that stipulation is for a penalty, which the courts will not enforce, and not for liquidated damages (17 C. J., beginning on page 931, and cases therein cited) ; that an action at law for compensatory damages will not afford him adequate relief because the damages which he will sustain from the breach of the said covenant are not capable of ascertainment; and that, therefore, he has no adequate remedy at law and injunction is his proper remedy, citing *Proctor* v. *Hansel*, 205 Iowa, 542, 218 N. W. 255; *Cook* v. *Johnson*, 47 Conn. 175, 36 Am. Rep. 64; *Doty* v. *Martin*, 32 Mich. 462; *Randolph* v. *Graham* (Tex. Civ. App.) 254 S. W. 402; *Granger* v. *Craven*, 159 Minn. 296, 199 N. W. 10, 52 A. L. R. 1356, and extensive note to the latter case; *Wilkinson* v. *Cooley*, 164 Pa. 35, 30 A. 286, 26 L. R. A. 114; *Threlkeld* v. *Steward*, 24 Okl. 403, 103 P. 630, 138 Am. St. Rep. 888. See, also, *Shubert Theatrical Co.* v. *Rath et al.* (C. C. A.) 271 F. 827, 20 A. L. R. 846; *Menter Co.* v. *Brock*, 147 Minn. 407, 180 N. W. 553, 20 A. L. R. 857, and an extensive annotation to the latter case beginning on page 861 of the latter collection of cases; *Samuel Stores* v. *Abrams*, 94 Conn. 248, 108 A. 541, 9 A. L. R. 1450, and a note appearing on page 1456 of the latter collection of cases; *Freudenthal* v. *Espey*, 45 Colo. 488, 102 P. 280, 26 L. R. A. (N. S.) 961; *Turner* v. *Abbott*, 116 Tenn. 718, 94 S. W. 64, 6 L. R. A. (N. S.) 892, 8 Ann. Cas. 150; *McCall Co.* v. *Wright*, 198 N. Y. 143, 91 N. E. 516, 31 L. R. A. (N. S.) 249.

Assuming, but not deciding, that the contract is open to the construction which by his argument appellant would have this court place upon it, with respect to the implied restrictive covenant which he says it contains and to the stipulation for damages, he nevertheless is not entitled to prevail because his case is lacking in equity. It is lacking in regard to certain particulars which ought to be made to appear somewhere in the record, say in allegations of the complaint admitted by the answer, or in the findings of the trial court, or in the evidence in order

to move a court of equity to extend its arm to restrain Dr. Low from engaging in the practice of his profession. The writ of injunction is issued by the courts as a matter of grace and not because the applicant has a right to it. 32 C. J. 29; *Leitham* v. *Cusick*, 1 Utah 242; *Swanson* v. *Sims*, 51 Utah 485, 170 P. 774. The application for injunctive relief is in the form of a prayer, addressed to the conscience of the chancellor, who may, in the exercise of a sound discretion, either grant the prayer or deny it, as the facts and circumstances of the case may seem to require. It is not in form nor in substance a demand that the court redress a legal wrong or vindicate a legal right, though legal rights, as well as equitable, often lie at the base of equitable claims. Appellant by his complaint has stated a cause of action which entitles him at least to nominal damages, upon the basis of the assumptions above stated, by alleging the making of the contract by the parties and the breach thereof by respondent; and the findings are sufficient to support a conclusion that he is entitled to a judgment for such damages, if he had not waived all claim to damages. But equity requires that he show something more than the mere making of the contract and its breach. The writ of injunction, as all the authorities above cited go to show, is issued in cases of this kind only to prevent great and irreparable injury to the complaining party. The purpose of the writ is to protect him from an injury which he will sustain in his own business or practice because of the competition of the other party, who has agreed by his contract not to compete. It must therefore appear somewhere in the record, or facts and circumstances must appear from which the court may infer, that plaintiff will suffer such an injury if the writ be not issued. Competition is the act of seeking, or endeavoring to gain, what another is endeavoring to gain at the same time. It does not appear in this record, and there is nothing shown from which the court would be warranted in inferring, that Dr. Melrose is himself engaged or intends to engage in the practice of medi-

cine in Carbon county during the time stated in the contract. Therefore, the court cannot say that Dr. Low is competing with him. If there is no competition there can be no irreparable injury. Furthermore, it is quite possible, even assuming that these two doctors are striving at the same time for medical practice in Carbon county, that Dr. Melrose is not being injured by the competition of Dr. Low. Whether or not competition from one is injurious to another depends upon a great many facts and circumstances, such as the relative standing of the parties in their profession and in public estimation, their skill and ability as physicians and surgeons, the time during which they have been engaged in practice in the particular locality and elsewhere, the amount of business to be obtained in the locality, none of which are mentioned or alluded to in this case. The court ought to be informed concerning these matters, or at least enough concerning the facts and circumstances surrounding the parties, so that it would appear that injunctive relief is necessary to protect the appellant from irreparable injury. Since these matters do not appear and hence the case is not one which requires that equitable relief be awarded to the party praying for it, the judgment ought to be affirmed.

JUDGMENT AFFIRMED. Costs to respondent.

STRAUP, ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein.