239 P.2d 1082

**HENDERSON v. JACOBS.**

No. 5449.

Supreme Court of Arizona.

Jan. 21, 1952.

Frank Stanlis, of Wickenburg, for appellant.

Edward B. Ashurst, of Wickenburg, for appellee.

DE CONCINI, Justice.

On November 10, 1948, T. S. Henderson, hereinafter referred to as appellant, entered into an option agreement with A. E. Jacobs, hereinafter referred to as appellee, whereby the latter was given an option to purchase appellant's "plumbing contracting and supply business" for $6,000. One thousand dollars was paid for the option, and $1,000 was to be paid November 24, 1948, and $100 per month thereafter. Appellee did not pay the November 24th payment but took possession of the business, trucks, and inventory. On January 5, 1949 appellee borrowed $1,000 at the bank, with appellant's endorsement, and paid same to appellant on the option agreement to purchase. Subsequently appellee repaid the bank at no cost to the appellant.

On January 27, 1949, the parties entered into another agreement as follows:

"This Agreement, addendum to Agreement dated November 10th, 1948, by and between Taylor S. Henderson and Aubrey E. Jacobs, as named herein,

"Witnesseth: That said Jacobs shall without delay return to said Henderson the motor vehicles * * * and that the materials included in the inventory shall be returned to said Henderson (so far as such inventory shall have been passed to said Jacobs); and further said Aubrey E. Jacobs agrees to supply to said Henderson sufficient materials and supplies to equal 87% (eighty-seven per cent) of One Thousand ($1,000) Dollars computed at cost price.

"And upon the transfer of the said properties as above stipulated, said Jacobs shall be relieved now and forever from the payment of any further payments under the said contract of November 10th, 1948, and said agreement shall be considered executed in full by said Jacobs in each and every particular.

"Dated this 27th day of January, 1949.

"Henderson shall not work in said business for a period of 5 years within the Wickenburg area except with approval of Jacobs and except for such contracts let by C. L. Maguire *which Jacobs is unable to contract*."

Appellee returned to appellant the trucks, and the inventory that had passed into his hands, and in addition $870 worth of his own supplies. This made a total of $2,870 of value transferred by appellee to appellant in connection with both the option agreement and the "addendum" agreement.

After this agreement had been signed, appellant worked on several different occasions as a plumber for day wages in the Wickenburg area. Appellee instituted proceedings to obtain an injunction against appellant so working as a plumber or as a plumbing contractor in that area for a period of five years from the date of the January agreement. The case was presented before the trial court (sitting without a jury) as a court of equity. The trial court enjoined appellant from " * * * working as a plumber for hire, or in the plumbing business, in the Wickenburg area, for a period of five years commencing January 27, 1949, except for such contracts as are held by C. L. Maguire, which Aubrey E. Jacobs is unable to contract". This judgment and injunction was modified after appellant had objected to its form. Insofar as important now, that modification dealt with what comprised the "Wickenburg area": " * * * That the court finds and adjudges that the words 'Wickenburg Area' as used in the supplementary agreement made and entered into by and between Plaintiff and Defendant on January 27, 1949, includes the central area surrounding the Town of Wickenburg, Arizona, and the Town of Aguila, Arizona, and the Town of Morristown, Arizona, and the Town of Congress Junction, Arizona, also known as Congress, Arizona." A motion for a new trial was made and denied and appellant then appealed to this court.

Appellant makes six assignments of error. Assignments 1 and 2 will be treated together, since they both deal with the same issue. Appellant asserts in his first assignment that the "Appellee did not bear the burden of proof to show the necessity for an injunction", meaning that appellee failed to show that he suffered any damages.

Appellee introduced into evidence the agreement of January 27, 1949, which set out the restrictive covenant. Witnesses then testified that appellant had worked as a plumber in the town of Wickenburg and the area immediately outside that town

after the date of the agreement not to do so. (The question of a possible distinction between "plumber for hire" and "plumbing contractor" will be treated later.) Appellant urges on us the Utah rule with regard to the necessity of showing irreparable injury before an injunction will issue. Melrose v. Low, 80 Utah 356, 15 P.2d 319, and followed in De Soto v. De Jaquez, 44 N.M. 564, 106 P.2d 301. This court has held that a restrictive covenant is enforceable even though no damages have been shown. In Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132, 133, speaking of a restrictive covenant with regard to land, we said "In this case it is not shown that appellees would suffer any substantial injury as a result of the erection of the proposed service station. But in cases of this character it is not necessary to prove special damages in order to secure injunctive relief. (Citing cases.)" While the facts are dissimilar yet the same proposition of law is applicable.

The majority rule governing restrictive covenants as applied to sale of businesses is found in 43 C.J.S., Injunctions, § 84b at page 566: "Where an established business has been sold with its good will and there is a valid covenant not to compete, a breach is regarded as the controlling factor and injunctive relief follows almost as a matter of course. In such cases the damage is presumed to be irreparable, and the remedy at law is considered inadequate. It is not· necessary that the buyer first prove special pecuniary damages or show an actual loss of customers who might in any event have discontinued their patronage. Injunctive relief may be given, even though only nominal damages are shown or although no actual damage is shown. * * *" In light of the foregoing, we hold .that there is no merit to appellant's first and second assignments of error in that the appellee need not allege nor prove special damages.

Appellant's third assignment of error is that "The Court erred in rendering and entering judgment for a permanent injunction against Appellant for the reason that the agreements upon which Appellee relied are so vague and ambiguous that they are void as a matter of law." The phrases that appellant urge as being ambiguous are the following: "plumbing contracting and supply business; said business; Wickenburg area; such contracts let by C. L. Maguire *which Jacobs is unable to contract*."

12 Am.Jur., Contracts, sec. 64, page 556, reads in part as follows: "The determination that an agreement is sufficiently definite is favored. The courts will, if possible, so construe the agreement as to carry into effect the reasonable intention of the parties if that can be ascertained." And section 65, page 557 follows with: "The. fact that a sufficiently exact meaning can be ascertained only by considering admissible evidence of extrinsic facts does not render the agreement in-

valid for indefiniteness. The maxim 'id certum est quod certum reddi potest' applies. An agreement need not contain definitely and specifically every fact in detail to which the parties may be agreeing; it is sufficient if the phrases can be made certain by proof. Where the words and acts of the parties are somewhat ambiguous and indefinite, the surrounding circumstances may be considered in determining their exact meaning and the contractual obligation created. The exact meaning may be determined by reference to extrinsic facts relevant to the question. * * *" From the foregoing, it is apparent that the agreement was not void as a matter of law, but that parol evidence was properly admitted to explain and make certain any of the ambiguities.

The fourth claimed error is that there was no consideration for the restrictive covenant, because "Where a party merely does that which in law he is bound to do he cannot demand any additional consideration therefor; and, if he obtains an additional promise from the other party, it is nudum pactum and unenforceable." We agree with this abstract proposition of law but do not believe that it is applicable to the facts of the present case. Appellant's argument on this point is that since appellee failed to make the $1,000 payment to exercise the option on November 24th, the latter lost the $1,000 paid as consideration for the option, by reason of the liquidated damages clause. Also that appellee was duty bound to return the vehicles and inventory. It is important to note that the business was not turned over to appellee by appellant until after he had already defaulted in exercising the option.

Question asked appellant: "On the 24th of November did Mr. Jacobs (appellee) exercise the option to buy the business?" Answer: "I let him take it over but he did not pay the $1,000."

■ By turning over the business without the payment, appellant waived the breach by appellee. Even without this, the same would hold true, as on January 5, 1949 appellant accepted $1,000 which was given as a payment on the business. By reason of this payment there was no longer only an unexercised option, but rather this payment was in effect the $1,000 which was supposed to be paid on November 24th to exercise the option.

This answers the appellant's argument that appellee in returning the vehicles, etc., was only doing that which he was required to do under the option agreement. After the payment made on January 5th, appellee became liable for the full performance of the contract. However, as evidenced by the writing of January 27th, the parties changed their minds as to what should constitute full performance of the contract. By this later writing the parties agreed "And upon the transfer of said properties as above stipulated, said Jacobs shall be relieved now and forever from the payment of any further payments under the said contract of

November 10th, 1948, *and said agreement shall be considered executed in full by Jacobs in each and every particular*." (Emphasis supplied.) The surrender of rights by each under the old agreement, alone furnished sufficient consideration for the new or "addendum" agreement. There was also an additional consideration of $870 worth of supplies turned over to appellant. In view of the actions of the parties based on the subsequent "addendum" agreement we cannot agree with appellant that there was no consideration for the restrictive covenant.

Appellant's fifth assignment of error reads "The Court erred in rendering and entering judgment for a permanent injunction against appellant for the reason that the restrictive covenant, prohibiting appellant from earning a livelihood, is against public policy and void." While the early rule with regard to covenants of this type is that they were void as being against public policy, the majority of jurisdictions do not today have such a blanket rule. In absence of statute, the courts now consider each case on its own facts. Reasonableness is now the deciding factor. 17 C.J.S., Contracts, § 245, page 626 gives the rule as follows: "Where the restraint is limited as to both time and space, the agreement is ordinarily valid, unless such agreement is to refrain from all business whatsoever, * * *". Section 246 of the same volume continues: "The validity of an agreement in restraint of trade is according to the trend of authority to be tested by its reasonableness with respect to the protection of the covenantee and the public interest involved, and in all cases it is essential that the restrictive covenant be incidental to another lawful contract or sale involving some interest requiring the protection of the restraint, * * *". In the instant case the restraint was for five years, which prohibited appellant from working in "said business" in the "Wickenburg area". The covenant was as follows: "Henderson shall not work in said business for a period of 5 years within the Wickenburg area except with approval of Jacobs and except for such contracts let by C. L. Maguire *which Jacobs is unable to contract*." The covenant is limited to the "Wickenburg area" but did not prohibit appellant from engaging in all types of work whatsoever, but rather prohibited him from working in "said business". We hold that such a covenant was reasonable and not violative of public policy.

Appellant's sixth assignment of error is that the permanent injunction entered by the trial court is vague, ambiguous and incapable of interpretation. Also, that in enjoining appellant from working as a "plumber for hire" it went beyond the intent of the parties.

We cannot agree with appellant, as to the first part of this assignment. There was testimony to sustain the trial court's judgment that the sale of the plumbing business included the area described in

the injunction. Appellant himself answered questions of his own counsel as follows:

"Q. All you were selling to Mr. Jacobs was that business described in those two instruments? A. That's right.

"Q. And you sold him all that business no matter where it may have fallen? A. That's right."

It appears too clear for argument that appellant sold his "plumbing contracting and supply business" and agreed not to work in "said business" in that area, "no matter where it may have fallen", for a period of five years. The wording of this part of the injunction is as certain as it could be made.

▆▆ The injunction forbade appellant from working as a "plumber for hire" or "in the plumbing business". In an earlier part of this opinion we mentioned that there might be a distinction between these two classifications. Undoubtedly there is an important distinction, but it is not necessary to go beyond the wording of the restrictive covenant to affirm the action of the trial court in enjoining appellant from working either as a "plumber for hire" or "in the plumbing business". The covenant reads in part:

"Henderson *shall not work in said business* * * *", (emphasis supplied) which the trial court held to mean, Henderson shall not be associated with the plumbing business, as a plumber or contractor for the agreed period of time. The term "said business" can mean only one thing, i. e., the plumbing business in the Wickenburg area. According to Webster's New International Dictionary, 2d Edition, the word "work" when used as a verb means: "To be engaged or employed customarily in some occupation, esp. in some gainful trade, business, profession, or the like; as, he *works* in a warehouse or a livery stable; he *worked* long upon the painting of the hands."

We must presume that the language employed by the parties to the addendum agreement was used advisedly and was designed to express the intent of the parties. One who *works* in the plumbing business includes not only the owner or one engaged in the business but includes every person who performs any service in the business whether it be as a clerk, secretary, pipe fitter, ditch digger or other work connected with the plumbing business. It is all-inclusive.

The word "work" was therefore unquestionably chosen instead of either the word "engage" or "conduct" because it was intended to extend the restrictive clause to cover all work connected with the plumbing business and not merely to prevent appellant from opening up another plumbing business in competition with appellee.

It is so well known, the fact cannot be gainsaid, that in a small town like Wickenburg, if appellant has been successful in the plumbing business to the extent that his work has given general satisfaction, if

he is permitted to work for a competitor who now is or may hereafter engage in the business of plumbing in Wickenburg he can successfully alienate appellee's newly acquired customers and induce them to patronize the plumbing firm by whom he is employed and thus may completely destroy appellee's business. It was for this very purpose that the word "work" was used instead of the word "engage" or "conduct".

Judgment affirmed.

UDALL, C. J., and STANFORD, PHELPS and LA PRADE, JJ., concur.