424 P.2d 828

**H & W TOOL CO., an Arizona corporation, and James P. Watts, an individual, Appellants,**

**v.**

**Allan D. MESHEW and Elsie Meshew, his wife, and Robert C. Griffin and Dolores M. Griffin, his wife, Appellees.**

No. I CA–CIV 222.

Court of Appeals of Arizona.

March 14, 1967.

Rehearing Denied April 17, 1967.

Review Denied May 9, 1967.

Kaplan & Wilks, by Richard B. Wilks, Phoenix, for appellants.

Snell & Wilmer, by Paul V. Wentworth, Phoenix, for appellees.

DONOFRIO, Judge.

This is an appeal by H & W Tool Co. and James P. Watts from a summary judgment entered against them.

In granting summary judgment the trial court ruled on a motion of defendants Meshew and Griffin wherein they set forth that the agreement upon which plaintiff's action was based was invalid and unenforceable. The effect of the Court's ruling was that under the pleadings there was no genuine issue as to any material fact and that, as a matter of law, the defendants were entitled to judgment. Rule 56 (c), Rules of Civil Procedure, 16 A.R.S.

Plaintiff tool company in a verified complaint alleged that it was the assignee of all right, title and interest in and to an agreement by and between Watts and the defendants Meshew and Griffin. It further alleged that Watts had entered into this agreement, which was entitled "An agreement for the manufacture and distribution of a manhole lid lifter, or tool", with the defendants for the manufacture and distribution of a certain manhole lid

lifter which defendants had invented and as to which they had applied for patent rights. Plaintiff further alleged that, on the basis of this agreement, it had entered into contracts with other parties for the sale and advertising of the tool; that, subsequently, the defendants informed plaintiff they had decided to breach the agreement and to enter into contracts with others for the manufacture and distribution of the tool. Plaintiff alleged that this tool was unique, and sought an injunction against this threatened manufacture and distribution. By an amended complaint plaintiff also sought damages for breach of contract.

Defendants filed an answer to the complaint and counterclaim. They also filed a claim against Watts, naming him as a counter-defendant. The answer and counterclaims admit the execution of the agreement by the defendants but allege that the assignment conferred no rights in plaintiff; that it was vague, ambiguous, uncertain and devoid of mutuality, and, therefore, invalid and unenforceable. They allege that, even if the agreement (which they allege was prepared by Watts) was enforceable it was unassignable, asserting that, when Watts executed the assignment, he breached an agreement he had with them not to assign; further that they were induced to enter into the agreement by the fraudulent representations of Watts that he was acting for himself when, in fact, he was acting for the undisclosed principal, plaintiff tool company. They further allege that during the course of negotiations Watts agreed to be personally responsible for the manufacture and distribution of the tool and that the plaintiff tool company would have no interest in and to the tool or in any agreement for its manufacture and distribution. In addition to seeking that the agreement be declared invalid, defendants asked for its rescission on the grounds of fraud and failure of the meeting of the minds of the parties.

Counter-defendants H & W Tool Co. and Watts filed a reply denying the in-validity of the agreement. They admitted allegations of the defendants that there had been numerous discussions during a period of four weeks prior to the written agreement. They asserted that after these discussions the agreement was prepared jointly by Watts, Meshew and Griffin. They denied that any false representations were ever made regarding an undisclosed principal, but, on the contrary, alleged that Watts fully disclosed that he was acting for the plaintiff tool company. Further the counter-defendants admitted the assignment but denied all allegations inferring that the tool company was an undisclosed principal or that the parties had ever agreed that the tool company was not to be a participant in the subject matter of the agreement.

Although appellants have raised a procedural question we shall deal only with the main issue which is dispositive of this appeal; namely, whether the trial court erred in granting defendants' motion for a summary judgment.

Inasmuch as the pleadings, which were the only instruments before the Court, reveal many genuine issues of material fact, counsel agree that the only basis upon which the Superior Court made its ruling was that the agreement upon which the action was founded was on its face invalid and unenforceable.

Appellees urge that the agreement is devoid of mutuality and that its words, terms and meaning are so vague, ambiguous and uncertain as to render it invalid and unenforceable. Appellants, on the other hand, contend that it is a valid agreement prepared by the parties themselves not trained in the law, and that it is ambiguous in some of its terms, which ambiguity can be clarified by parol evidence to show the true intention of the parties. The thrust of their appeal is that in face of the verified complaint wherein the plaintiff has alleged the meaning of the written instrument, the Court has erred in ruling for

defendants without the benefit of affidavits or other proof from the defense. They contend that, by summarily ruling, the Superior Court ignored the law which allows parol evidence to clarify the meaning and intention of the parties.

■ There is little question that the agreement uses language which is doubtful, uncertain, and which admits of different interpretations. This alone does not render an agreement nugatory as it may have been clear enough to the parties to express what they understood and intended at the time they executed the instrument.

In the case of Henderson v. Jacobs, 73 Ariz. 195, 239 P.2d 1082 (1952), the Court was faced with the question of whether certain agreements were so vague and ambiguous that they are void as a matter of law. The Court held and set out the law as follows:

"12 Am.Jur., Contracts, sec. 64, page 556, reads in part as follows: 'The determination that an agreement is sufficiently definite is favored. The courts will, if possible, so construe the agreement as to carry into effect the reasonable intention of the parties if that can be ascertained.' And section 65, page 557 follows with: 'The fact that a sufficiently exact meaning can be ascertained only by considering admissible evidence of extrinsic facts does not render the agreement invalid for indefiniteness. The maxim "id certum est quod certum reddi potest" (That is certain which can be made certain) applies. An agreement need not contain definitely and specifically every fact and detail to which the parties may be agreeing; it is sufficient that the phrases can be made certain by proof. Where the words and acts of the parties are somewhat ambiguous and indefinite, the surrounding circumstances may be considered in determining their exact meaning and the contractual obligation created. The exact meaning may be determined by reference to extrinsic facts relevant to the question. * * *' From

the foregoing, it is apparent that the agreement was not void as a matter of law, but that parol evidence was properly admitted to explain and make certain any of the ambiguities." 73 Ariz. 195, 199–200, 239 P.2d 1082, 1085.

■ The rule on admissibility of parol evidence is clearly stated in Sec. 157, Udall, Arizona Law of Evidence:

"Where it appears *on the face of the instrument* that the language is doubtful, uncertain or ambiguous, or admits of different interpretations (i. e., so called 'patent ambiguities'), evidence of the surrounding conversations, letters and circumstances is always admissible to ascertain the intention of the parties. * * *" (pp. 327–328)

■ We have carefully read the written instrument executed by the parties and, bearing in mind the verified complaint, cannot say as a matter of law that the alleged agreement is invalid on its face. It contains many positive statements that the parties intended to enter into a valid contract for the manufacture and sale of the tool invented by the defendants. It provides how each is to share in the venture. The terms purport to set forth the obligations of the parties, yet they are written in such a way that many ambiguities appear. Many words and phrases are used, the true dictionary meaning of which do not fit, yet they have enough relation to the subject matter that the parties' minds may have met in giving them a meaning and definition of their own. When the language of the contract is understood, its meaning might well explain the true intention of the parties. Only when the true intentions of the parties are ascertained can the Court properly apply the law and determine if the contract is valid and enforceable. It is at this point that the Court can determine any lack of mutuality which might render the contract nugatory.

We hold that the Superior Court was in error in ruling on the validity of the agree-

ment without the benefit of the testimony of the parties who drafted the instrument.

Genuine issues of material fact exist. It was error to grant summary judgment.

Reversed.

CAMERON, C. J., and JACK G. MARKS, Judge of Superior Court, concur.

Note: Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.