**In re Ned SABAN and Loretta Livingston Saban, Debtors.**

**U–HAUL CO. OF ARIZONA, an Arizona corporation, Appellee,**

v.

**Ned SABAN and Loretta Livingston Saban, Appellants.**

**BAP No. AZ–82–1269 EAsH.**
**Bankruptcy No. 82–0334–PHX–VDM.**
**Adv. No. 82–254–VDM.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Jan. 12, 1983.

Decided June 7, 1983.

Ronald H. Cimala, Mayer, Vucichevich & Cimala, Phoenix, Ariz., for appellants.

Michael S. Rubin, Mariscal, Weeks, McIntyre & Friedlander, Phoenix, Ariz., for appellee.

Before ELLIOTT, ASHLAND and HUGHES, Bankruptcy Judges.

## OPINION

ELLIOTT, Bankruptcy Judge:

Ned Saban ("Saban") is a U-Haul rental agent who operates two rental facilities in Phoenix, Arizona. Saban and his wife, Loretta Livingston Saban, (collectively "the Sabans") are joint chapter 11 debtors under Title 11 United States Code (the "Bankruptcy Code"). They appeal from summary judgment in favor of U-Haul of Arizona ("U-Haul") holding that Saban breached his contract and enforcing against Saban a covenant not to compete.

The issues before this panel are whether, on U-Haul's motion for summary judgment, the trial court properly determined that Saban breached his rental agency contract and, assuming that Saban did breach the contract, whether the covenant not to compete is enforceable. We hold that the trial court properly determined that Saban had materially violated the terms of the contract and that his breach justified immediate termination of the contract. However, we further hold that as a matter of law, the covenant not to compete is void. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

I

U-Haul is one of the companies comprising the national U-Haul rental system, and is the owner of various types of household moving equipment, including trucks, trailers and related accessories. Saban has been a U-Haul rental agent for more than twenty years. At the time of delivery of U-Haul's termination notice, Saban was operating under the terms of a written "U-Haul Rental Agency, Moving Center/Storage and Hitch World Agreement" executed on November 17, 1980 (the "Agreement"). The Agreement consists of three parts. In addition to defining Saban's rights and duties as a U-Haul rental agent, the Agreement contains separate provisions authorizing Saban to use, under specified conditions, U-Haul's trademarks "Moving Center" and "Hitch World".

Under the Agreement, all monies paid by U-Haul equipment users to Saban are to be held in trust for, and remitted weekly to, U-Haul International, Inc., which acts as a clearinghouse for the U-Haul system. Various procedures are prescribed in order to permit U-Haul to ensure that a proper accounting is made for all rentals and use of U-Haul equipment.

The rental agency portion of the Agreement contains the following provision:

THIS SECTION OF THIS AGREEMENT MAY BE TERMINATED BY EITHER PARTY ON THIRTY DAYS WRITTEN NOTICE OR WITHOUT PREVIOUS NOTICE UPON MATERIAL VIOLATION BY THE OPPOSITE PARTY OF ANY PROMISE OR CONDI-

TION HERETOFORE MENTIONED. Upon termination of this contract for any material reason, [Saban] warrants, covenants, and agrees, that within the geographical limits of Maricopa County, [Saban] will not represent or render any service either on his own behalf or in any capacity for any other persons, firm, or corporation engaged in any rental business which offers the rental of equipment similar to that operated by U-Haul Co. for the duration of the then existing telephone directory listing, plus a period of one year from the termination of such telephone directory listing.

U-Haul claims that as a result of an audit conducted of the Saban facilities in January 1982, it discovered hundreds of instances of concealed rental revenue which had fraudulently been withheld from it. It alleged that the "embezzled" revenue exceeded $40,000. U-Haul also alleges that the audit revealed other irregularities and violations of procedures called for in the Agreement including various instances of unaccounted odometer mileage on U-Haul equipment.

On the morning of February 12, 1982, U-Haul delivered to Saban a notice that the Agreement was terminated for material violations of its terms. U-Haul's letter cited Saban's failure to remit to U-Haul monies owed it for rentals. That afternoon the Sabans filed their joint chapter 11 petition.

Shortly thereafter, U-Haul commenced this adversary proceeding against the Sabans. The Sabans filed counterclaims and third-party claims against U-Haul, its parent corporation, and certain of their officers. The court bifurcated all of Saban's counterclaims and third-party claims. The U-Haul complaint in its final amended form contains seven claims for relief. Only the first, third, and fourth claims are relevant to this appeal because the trial court granted U-Haul's request for summary judgment on those claims. The first claim seeks a declaratory judgment that the "rental agency" portion of the Agreement was terminated prior to the filing of the petition, that U-Haul is entitled to various equipment and records in the possession of Sa-

ban, and that the "Storage Center" and "Hitch World" provisions of the Agreement were terminated effective 120 days after the delivery of the termination notice. The third claim seeks an injunction enforcing the terms of the covenant not to compete contained in the "rental agency" termination provision on the grounds that Saban materially violated the agreement. The fourth claim seeks money damages for breach of the contract.

## II

The "Storage Center" and "Hitch World" provisions of the Agreement are governed by separate termination provisions. Apparently the Sabans do not contest the judgment on the first claim for relief with respect to the termination of those provisions. Thus, the significant issue arising out of the first claim for relief is whether there were material violations that warranted termination of the rental agency provision as of the time of U-Haul's termination notice. If there were such material breaches, judgment as to the first claim must be affirmed. Moreover, as to the third claim for relief, if there were such a material breach, the court's judgment must be affirmed unless public policy precludes enforcement of the covenant not to compete.

■ The first and third claims are properly before us even though numerous issues remain to be litigated because the trial court "certified" the severability of its judgment in accordance with Rule 54(b) Fed.R.Civ.P. [made applicable by Bankruptcy Rule 754(a)]. Although the court nominally entered judgment upon the fourth claim for relief, that judgment does not address the amount of damages assessable against Saban. Therefore, as to the fourth claim for relief, no final judgment has been rendered. Because this panel has not consented to review the partial summary judgment on the fourth claim on an interlocutory basis, the fourth claim for relief is not properly before us notwithstanding the trial court's certification under Rule 54(b). 28 U.S.C. § 1482. *See Curtiss-Wright Corp. v. General Elec., Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).

Thus we consider in turn whether there was a material breach by Saban and whether the covenant not to compete is rendered unenforceable by the application of public policy.

### III

The evidence in the record shows beyond question that in numerous instances the procedural and substantive requirements of the Agreement were materially breached. U-Haul submitted overwhelming and uncontroverted evidence that rental records were regularly and materially falsified and that rent due U-Haul was regularly not remitted.

Saban does not deny these violations of the terms of the Agreement. Rather his counsel alleges that the highest officials of the national U-Haul organization, including its founder and leading officer, L.S. Shoen, through a consistent course of conduct, impliedly modified the agreement to permit Saban to "pad rentals" and otherwise vary from the standard of conduct required by the written agreement.

Counsel for Saban argue that U-Haul officials permitted this otherwise nonconforming conduct in order to permit Saban to make up for losses incurred by him that resulted from U-Haul's failure to reimburse him for various expenses normally absorbed by U-Haul and that U-Haul's motivation for seeking termination of Saban's rental agency is far different than it professes. They argue U-Haul's attempts to terminate Saban are not a manifestation of any recently discovered improper dealings by Saban, but rather are a manifestation of deteriorated personal relationships between the Saban and L.S. Shoen families. Counsel assert that the Saban and Shoen families were formerly close friends. They ascribe Saban's present problems to his refusal to make good an alleged debt owed by his son to one of Mr. Shoen's sons amounting to more than $700,000 which resulted from a failed business venture.

■ Counsel's argument in this regard is meritless. This panel will affirm a grant of summary judgment "only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the appellant, that there are no genuine issues of material fact and the appellee is entitled to prevail as a matter of law." *International Ladies Garment Workers Union v. Sureck,* 681 F.2d 624, 629 (9th Cir.1982). On motion for summary judgment, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e) (made applicable by Bankruptcy Rule 756); *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,* 690 F.2d 1235, 1238 (9th Cir.1982) ("a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda"); *In re Sarner,* 22 B.R. 63 (Bkrtcy.App.Pan. 9th Cir.1982).

■ We are not presented with the situation of conflicting evidence concerning the intentions of the parties. There is no direct support in the record for the "consent-modification" theory espoused by Saban's counsel. Nor is there any support for the assertion that U-Haul is acting as a result of an improper motivation or has "unclean hands" with respect to these transactions. Counsel's version of the facts is supported only by wildly extravagant extrapolations from the record. It is clear, as to the first claim for relief, the trial court properly granted summary judgment.

### IV

We turn to the enforceability of the covenant not to compete. Given that a material breach of the contract occurred, it is apparent that the covenant should be enforced unless to do so contravenes public policy.

### A

■ Covenants not to compete have been traditionally viewed with suspicion by the courts on the grounds that they violate the public policy against restraints on trade. However, covenants not to compete are generally upheld if they are limited in geo-

graphic scope and duration and are reasonable and necessary to protect the legitimate interests of the other party. In this respect, Arizona law, which controls in this case, is not exceptional. *See Henderson v. Jacobs,* 73 Ariz. 195, 239 P.2d 1082 (1952).

Covenants executed by employees restricting their ability to compete upon termination are scrutinized more carefully than those executed by sellers of businesses. Although Saban was not an employee of U-Haul, the contractual relationship between the parties leads us to conclude that the covenant at issue here should be examined with greater scrutiny than one executed in connection with the sale of a business. Under Arizona law, the public policy prohibiting unreasonable restraints in trade requires not only that the covenant be reasonably limited in duration and geographic scope but also that it does not extend beyond what is reasonably necessary for the protection of the employer's business and is not unreasonably restrictive on the rights of the employee. *Lessner Dental Laboratories, Inc. v. Kidney,* 16 Ariz.App. 159, 492 P.2d 39 (1971).

We hold that the covenant is reasonable as to time and geographical reach. *Lassen v. Benton,* 86 Ariz. 323, 346 P.2d 137 (1959) (upholding covenant against former veterinarian employee extending for 5 years to practice within 12 miles of Mesa); *Henderson v. Jacobs,* 73 Ariz. 195, 239 P.2d 1082 (1952) (upholding covenant against seller of plumbing business extending for 5 years to working within "Wickenburg area"); *Snelling and Snelling, Inc. v. Dupay Enterprises, Inc.,* 125 Ariz. 362, 609 P.2d 1062 (Ariz.App.1980) (upholding covenant against franchisee of recruiting firm from competing within 35 miles of former territory for 3 years); *Gann v. Morris,* 122 Ariz. 517, 596 P.2d 43 (Ariz.App.1979) (upholding covenant against seller of silk screening business extending for 10 years within 100 miles of Tucson). We also hold that the covenant is reasonable as to protection of U-Haul's business and is not unduly restrictive of the rights of Saban. *See Snelling and Snelling, Inc. v. Dupay Enterprises, supra.*

The courts of at least two states have upheld covenants not to compete of identical scope and duration signed by U-Haul rental agents. *U-Haul Co. of Central Illinois v. Hindahl,* 90 Ill.App.3d 572, 45 Ill.Dec. 854, 413 N.E.2d 187 (1980); *U-Haul of North Carolina, Inc. v. Jones,* 269 N.C. 284, 152 S.E.2d 65 (1967). However, in each of these cases the covenants not to compete were invoked automatically upon termination as to all rental agents *without regard to the reason for* termination, whereas in the proceeding before us, the covenant is invoked only upon material breach.

### B

Normally when covenants not to compete are challenged they are challenged on the grounds that they contravene the public policy against restraints upon competition and trade. We have found that, at least under Arizona law, U-Haul could, without offending this public policy, legitimately bargain for a covenant not to compete of the scope and duration of the one in the Agreement. But this is not the only public policy in the domain of law regulating contracts.

A fundamental feature of contract law is that the parties may not specify noncompensatory penalties for breach.

> [T]he parties to a contract are not free to provide a penalty for its breach. The central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy.

Comment a, § 356 Restatement (Second) of Contracts (1981). *See* 5 *Williston on Contracts* 3d Ed. §§ 769–811 (1961); 5 *Corbin on Contracts* §§ 1054–1075 (1964). This principle represents a public policy entirely separate from that restricting the enforceability of covenants not to compete because they unreasonably restrain trade.

Most commonly, the principle that penalties called for in contracts are void is discussed in connection with liquidated damage provisions. Thus the Second Restatement of Contracts provides:

> Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

Restatement (Second) of Contracts § 356(1). A common problem is determining when a provision should be classified as a disguised penalty or as a valid liquidated damages provision. Were overt penalty claims enforceable, these refined restrictions on liquidated damages provisions would be rendered moot. The many Arizona cases dealing with the validity of liquidated damages provisions testify to the validity in Arizona of the doctrine condemning penalties enunciated in the Restatement. *See e.g. Aztec Film Productions, Inc. v. Quinn,* 116 Ariz. 468, 569 P.2d 1366 (Ariz. App.1977); *Central Alarm of Tucson v. Ganem,* 116 Ariz. 74, 567 P.2d 1203, 1207 (Ariz.App.1977); *Marshall v. Patzman,* 81 Ariz. 367, 306 P.2d 287 (1957).

 We are aware of no case considering the enforceability of a covenant not to compete which is invocable only in the event of a breach of contract. Although this is a question of first impression, it is clear that in general, nonmonetary contractual obligations may be rendered unenforceable when they are, in substance, penalties or forfeitures.

This covenant not to compete is clearly noncompensatory. Nothing indicates that the covenant is intended to act as a substitute for damages nor does U-Haul assert that the covenant should operate as a substitute for damages resulting from Saban's misconduct. Moreover, once having determined that the breach is material, the sanction of the covenant is invoked without regard to the quantity and quality of actual damage. Although it may be possible to hypothesize a situation where the invocation of a covenant not to compete may operate as a valid remedy for a breach of contract and thus act as a surrogate for liquidated damages, it is clear that in this contract the covenant is purely penal.

Saban argued before the trial court and has argued before this panel that the covenant was void as a penalty. Accordingly we are bound to consider this argument even though he failed to distinguish the independence of the public policies restricting restraints on trade and restricting penalties. Perhaps because of the blurring of these principles, U-Haul's response to Saban's claim that the covenant is a penalty misses the mark. U-Haul merely asserts that under Arizona law a covenant not to compete such as this one would be enforceable even if it applied to all rental agency terminations. It therefore concludes that it is absurd to suggest that the covenant is rendered unenforceable because it is narrower than that which U-Haul might have insisted upon. *Appellee's Ans. Brief* at 38.

With respect to the penalty issue, the question is not the narrowness or breadth of the covenant, but the circumstances which will trigger it. U-Haul could have bargained for a covenant not to compete effective upon all terminations; it chose not to do so. Instead it bargained for a forfeiture of the rental agent's right to compete for up to two years in the event the agent materially breaches his contract in addition to full compensatory damages.

The covenant is unenforceable as a matter of law. The trial court erred in not entering judgment against U-Haul on the third claim for relief.

## V

 For unexplained reasons, the trial court signed its memorandum decision and judgment in this case, as lodged by U-Haul, without giving Saban an opportunity to object to its form. The trial court's local rules create a lodging system which is intended to give the losing party five days to object to proposed findings and conclusions filed

by the prevailing party. The system operates according to its terms unless the "Court otherwise directs." Local Rule 47, U.S.Dist.Ct.Dist. of Arizona incorporated by Local Rule 9004, U.S.Bk.Ct.Dist. of Arizona. Saban sought reconsideration of the judgment on various grounds related to the form of the judgment, but did so only after having filed a notice of appeal. The trial court declined to modify the judgment having properly concluded that the notice of appeal divested it of jurisdiction. *In re Bialac,* 694 F.2d 625 (9th Cir.1982), *aff'g,* 15 B.R. 901 (Bkrtcy.App.Pan. 9th Cir.).

We hold the trial court did not commit reversible error by failing to give Saban an opportunity to object to the form of the judgment. Saban was free to raise any error he thinks exists in the form of the judgment upon appeal. In light of our disposition, all of Saban's objections to the form of the judgment which appear to relate only to the third claim for relief are moot. For the same reason we do not address Saban's argument that the trial court should have permitted him to reject the covenant not to compete as an executory obligation under Bankruptcy Code § 365.

The panel having determined in accordance with this opinion that final judgment was properly entered on the first claim for relief in favor of the Appellee and against the Appellants, but that as to the third claim for relief judgment should have been entered in favor of the Appellants, the judgment is AFFIRMED IN PART AND REVERSED IN PART, with instructions to enter judgment in favor of the Appellants as to the third claim for relief.