169 P.2d 78

DAVIS et al. v. KLEINDIENST.

No. 4870.

Supreme Court of Arizona.
May 20, 1946.

See, also, 64 Ariz. 67, 165 P.2d 995.

P. H. Brooks, of Winslow, for appellants.

C. D. McCauley, of Winslow, and Moeur & Moeur and Charles N. Walters, all of Phoenix, for appellee.

MORGAN, Judge.

Appellee, as plaintiff, instituted this action against appellants, defendants in the court below, for reformation of deed and to quiet title to a tract of ground in the city of Winslow. Defendants resisted the action on the ground that they were subsequent purchasers without notice and for a valuable consideration. They denied the allegations pertaining to plaintiff's right to quiet title. Defendant Edna Davis is a party by reason of her marital relationship to her husband. The parties will be designated as plaintiff and defendant. The facts proven at the trial may be stated as follows:

During the year 1924 plaintiff purchased from one John K. and Frances E. Kelley, through their attorney in fact John L. Sweeney, a tract of ground containing ap-

proximately 15 acres. The deed contained the following description: "Beginning at the fence at the Northwest corner of the Bazell Motor 'Company Camp Grounds, Thence in a due Northerly direction to the North Line of the John K. Kelley property, thence Westerly along the John K. Kelley property line to the J. E. Kleindienst property line, thence in a South and slightly Easterly direction along the J. E. Kleindienst property line to a point just West of point of beginning, thence due East to point of beginning, being unplatted acreage and a portion of the South East Quarter of Section 24, Township 19 North of Range 15 East, G&SRM, Winslow, Navajo County, Arizona."

Through error, the first course or eastern boundary was described as running "in a due northerly direction". Actually this line should have been described as running north 27 degrees east approximately. The deed, on its face, contained only 5.7 acres of the westerly portion of the tract which plaintiff was purchasing. The error resulted from the fact that while the platted portion of Winslow and additions thereto, other than the Mahoney addition, disclose the streets as running north 27 degrees east, they are generally referred to as northerly and southerly. At the time of the purchase, a survey was made and an iron stake was placed in the ground at the northeast corner of the tract, establishing the eastern line as running from the point of beginning north 27 degrees east to the

north line of the John K. Kelley property, and including approximately 15 acres.

No improvements were placed on the property nor was it enclosed. Taxes on the 15 acres were assessed to plaintiff and paid by him from and after the year 1925. The description in the assessor's office merely read "Unpl Hicks-W. Bazell C. G. 15 A," and later was carried as "15 A." In 1942, plaintiff hired an engineer who platted and subdivided the acreage. The iron pipe at the northeast corner was found and a cement block or marker placed at such corner. The plat so prepared was filed and accepted by the city council on June 2, 1942. It was not filed with the county recorder until February 24, 1944. It apparently was submitted to the county assessor who designated the same as platted land of the plaintiff's addition on the assessor's map. The time of this submission is not shown. At the date of the trial the cement block had been removed.

By quitclaim deed dated November 13, 1943, Frances E. Kelley quitclaimed to defendant "For and in consideration of the sum of One Dollar * * * All the unplatted acreage in the south-east quarter of section twenty-four (24), township Nineteen (19) North of Range Fifteen (15) East, Gila and Salt River Meredian, Winslow, Navajo County, Arizona, * * *." By warranty deed April 6, 1945, the same grantor conveyed to defendant Ralph Davis by metes and bounds, for a recited consideration as follows: "For and in consid-

eration of other valuable consideration and One Thousand Dollars" approximately 22 acres. This covered and included the 9.1 acres in controversy. The evidence also disclosed that the Kelleys, the original grantors, from and after 1924 continued to pay taxes on the land in controversy.

Shortly after defendant received the quitclaim deed above mentioned, the United States Government instituted a condemnation action in the Federal court for the purpose of procuring title to the land for a housing project. This action covered the disputed area as well as other lands of the parties in the area involved. The government tendered the price in court. To obtain release of the money being held, defendant on December 24, 1944, apparently at the request of plaintiff, wrote the following letter to Mr. Carson, the government attorney:

"Any protest that I have previously made and which interferes with the settlement between J. E. Kleindienst and the United States Government concerning project No. 2301 is hereby withdrawn.

"The property line as set forth on the map prepared by Yost and Gardner is acceptable by me and I agree that I have no claim to the property designated within the boundaries on the plat recorded in the County Assessors Office in Holbrook, Arizona."

Defendant, however, refused to sign a disclaimer or quitclaim for the described area, which was thereafter prepared by the government.

Before purchasing the land from Mrs. Kelley in 1943, defendant examined the records and plat in the assessor's office. His testimony is that from these records and from actual observation he had no notice of plaintiff's claim to the area in question.

It appears conclusively from the evidence that a mistake was made in drawing up the original warranty deed from the Kelleys to the plaintiff, and that it should have included the ground claimed by plaintiff in his complaint. It also appears that on or prior to December 24, 1944, the Yost and Gardner map mentioned in the letter of Ralph Davis to Mr. Carson described the eastern line of the tract as claimed by plaintiff. It is also shown by the evidence that about the time (probably shortly after) Mr. Davis had procured the quitclaim deed, he was fully advised by Mr. Sweeney as to the ground which plaintiff had purchased in 1924.

The case was tried to the court without a jury. It found the issues in favor of plaintiff and directed reformation of the deed as prayed by plaintiff. From the judgment entered, defendant has brought this appeal.

Defendant supports his various assignments of error by the following propositions of law which for the sake of brevity we paraphrase:

**.256**

1. · Plaintiff's deed could not be corrected by including additional land which defendant had purchased for value and without knowledge of mistake;

2. Defendant was not a party to the original deed. His interest attached to the land long after the mistake was made and the deed recorded. Therefore, parol or extrinsic evidence is not admissible to change the description contained in the recorded instrument;

3. Plaintiff wholly failed to prove open and notorious possession for the statutory period.

The fourth assignment of error, which we think fails to raise questions that we can properly consider, will be referred to later.

▊ Plaintiff concedes that defendant's first proposition correctly states the law, but takes the position that under the facts, the court properly found that defendant was not a purchaser for value and without knowledge of the mistake in the prior deed under which plaintiff claims the property.

▊ Obviously, the question as to whether defendant was an innocent purchaser for value without notice was, under the issues, one of fact for the trial court. If there is any substantial evidence which would support the trial court's finding that defendant was not an innocent purchaser for value and without notice, the judgment would have to be sustained. Stewart v. Damron, 63 Ariz. 158, 160 P.2d 321; Atchi-

son, T. P. & S. F. R. Co. v. Hicks, 64 Ariz. 15, 165 P.2d 167.

▊▊ It appears to be the rule that to warrant the reformation of an instrument, mere preponderance of the evidence is insufficient. The mistake urged as a ground for reformation must be established by evidence that is clear, convincing and satisfactory. Gingery v. Romeris, 24 Ariz. 267, 208 P. 1024; Northwestern Nat. Ins. Co. v. Chambers, 24 Ariz. 86, 206 P. 1081. Inasmuch as both plaintiff and the attorney in fact for the sellers, the Kelleys, testified that plaintiff's original purchase covered the ground in controversy, and that the description in the deed was a mistake, and this was uncontradicted, there can be no question that a full compliance was made with the rule. The evidence was clear, convincing and satisfactory.

▊ The controversial question in the case was whether defendant was an innocent purchaser for value and without notice. This question is to be determined under the ordinary rule—by a preponderance of the testimony. 66 C.J. 1201, sec. 1065, Vendor and Purchaser. The evidence as to this need not be clear, convincing and satisfactory. If, therefore, there is any reasonable evidence to justify the court in finding that the defendant purchased with notice, or was not a purchaser for value, then the judgment must be sustained.

▊ The testimony adduced by both of the parties, except as to matters upon which

as we have already stated there seems to be no controversy, was somewhat meagre and left many matters in doubt which might have been shown by an examination of the witnesses. Defendant argues at considerable length that the evidence adduced on the part of the plaintiff was wholly insufficient to justify the court in finding that he was not a purchaser in good faith and for value and without notice. If the testimony in this case disclosed that in 1943, the defendant at the time he received the quitclaim deed paid a valuable consideration, this argument would at least require us to carefully examine all the evidence to determine whether the court's judgment could be justified. We have gone carefully into the evidence, and do not find any testimony as to the purchase price paid by defendant either at the time the quitclaim deed was given in 1943, or in 1945 at the time the warranty deed was given to him by Mrs. Kelley, except such as appears in the recitals in the instruments. Unless defendant was a bona fide purchaser, he stood in exactly the same situation as the original grantors of plaintiff. 66 C.J. 1104, sec. 923, Vendor and Purchaser: "To constitute a grantee a bona fide purchaser as against outstanding equities or a prior conveyance, of which he had no notice, his deed must be supported by a consideration, within the meaning of that term as hereinafter defined. Therefore one who takes title as a mere volunteer is not entitled to protection as a bona fide purchaser for value, and this is true, although the prior conveyance was also voluntary."

This is also the effect of Phoenix Title, etc., Co. v. Old Dominion Co., 31 Ariz. 324, 253 P. 435, 59 A.L.R. 625, in construing section 71-423, ACA 1939, relating to subsequent purchases without valuable consideration. 53 C.J. 980, sec. 125, Reformation of Instruments.

When plaintiff, therefore, adduced his proof showing a mistake, the burden was imposed upon the defendant to show that he was a bona fide purchaser for value and without notice. 66 C.J. 1197, sec. 1063, Vendor and Purchaser. In such case the recitals in the deeds as to consideration would be no evidence as to the consideration paid. 66 C.J. 1108, sec. 933; 1204, Sec. 1067, Id. Even if the recited considerations in the instruments are to be considered, this would scarcely be helpful to defendant. The quitclaim deed recites a consideration of one dollar. This would not be a valuable consideration within the law relating to bona fide purchasers. The second or warranty deed received by defendant, which recites a consideration of $1,000, was not executed or delivered until 1945 and long after, from all the evidence, defendant had full knowledge and notice of plaintiff's claim to the property.

We call attention to the case of Adams Oil & Gas Co. v. Hudson, 55 Okl. 386, 155 P. 220, 222. In that case the defendant, a subsequent purchaser, claimed to be a bona fide purchaser. The deed re-

cited a consideration of $10,000. It offered no other evidence except the recital in the deed as to the consideration paid. The court held this to be insufficient. We quote from the opinion: "This being true, what constitutes a bona fide purchase? Three things must exist: (a) A purchase in good faith; (b) for value; and (c) without notice. Where a subsequent purchaser establishes a purchase for value, good faith and lack of notice are presumed, and the burden shifts to the party attacking the transfer to show bad faith and notice, actual or constructive. The recital in a deed that the consideration has been paid is prima facie evidence as between the parties and those claiming under them, but as to strangers and persons claiming in opposition the recital is no evidence as to the consideration paid. To them it is mere hearsay, and is no evidence of a purchase for value. (Citing cases). There is no proof in the record, as against the plaintiffs, even tending to show that the defendant company purchased for value. In the absence of such proof, good faith cannot be presumed. Indeed, the defendant company might be termed a bad-faith purchaser. At least it cannot be said to be a bona fide purchaser, and is therefore not entitled to the benefits thereof. The defendant company and its grantor, Adams, knew what consideration, if any, actually passed for this property. Adams and the officers of the defendant company, and some of its directors, testified as witnesses for the defendant company, but it did not see proper to advise the court what consideration, if any was actually paid. If, as a matter of fact, any consideration was paid, the nature, amount of it, and the facts with reference thereto were within the breasts of Adams and the officers and directors of the defendant company. It was the company's duty to advise the court fully with reference to these matters. This it failed to do, and, in the absence of a showing that it is a purchaser for value, it has no right to invoke the aid of a court of equity. Its hands are not clean. A bona fide purchaser is favored by the courts, but until one brings himself within the rule of a bona fide purchaser a court of equity will not extend its aid. We therefore conclude that the defendant company was not a bona fide purchaser. * * *"

Since the record fails to show that defendant was a purchaser for value, upon that ground alone the judgment of the court would have to be sustained. However, we have made an examination of the testimony pertaining to questions of notice. Taking all the facts and circumstances into consideration, it is our view that the court's finding that the defendant did have notice of plaintiff's claims would have to be sustained. The law seems to be settled that a person who fails to exercise due diligence to avail himself of information which is within his reach is not a bona fide purchaser. University of Richmond v. Stone, 148 Va. 686, 139 S.E. 257. Thus a purchaser who has brought to his attention circumstances which should have put him on inquiry which if pursued with due

diligence would have led to knowledge of an adverse interest in the property, is not a bona fide purchaser. Shephard v. Van Doren, 40 N.M. 380, 60 P.2d 635.

The evidence disclosed numerous acts of obvious ownership of the tract in question on the part of plaintiff. The platting and filing of the plat with the city council, the marking of the northeast corner of the tract with a cement block, the fact that the tract as purchased would square out plaintiff's original addition, the assessement of 15 acres out of the Hicks addition to the plaintiff, were all matters which at least were sufficient to put the defendant upon notice to make an inquiry. Any reasonable inquiry would have resulted in the disclosure that plaintiff claimed the tract in question.

What we have already said disposes in large part of the defendant's second proposition. As we have heretofore stated, reformation may be had against the original vendor and those in privity with him. The defendant was in privity with the original vendors. He holds title from one of them. It is of course settled that privity exists between two successive holders when the latter takes under the earlier by grant. Sherin v. Brackett, 36 Minn. 152, 30 N.W. 551. It may be said that privity exists where successive relationship or ownership to the same property from a common source appears. Green v. Wahl, 117 Okl. 292, 246 P. 419. One who is in privity, unless he be a bona fide purchaser for value without notice, takes the property subject to burdens existing against it and, in effect, stands in the shoes of his predecessor in title. Boughton v. Van Valkenburgh, 46 App.Div. 352, 61 N.Y.S. 574. The defendant was not a stranger, and was therefore subject to the same claims which might have been presented against the Kelleys.

We think it necessary to determine whether the proof of peaceable and adverse possession on the part of plaintiff was sufficient to justify the entry of the judgment. Apparently the judgment of the lower court was entered upon the theory that defendant was not a bona fide purchaser for value without notice, and therefore the deed could be reformed and judgment entered against him in the same manner as if the original vendors were the parties defendant. Under these circumstances, the question of whether plaintiff proved a case justifying a judgment under the ten-year statute of limitations would not be material. As between the plaintiff and defendant, the former would be entitled to a judgment of reformation and quieting title.

Defendant's fourth ground is that the court erred in correcting the mistake contained in the deed to include additional land because such additional land was never owned by the grantors who executed the deed. Apparently this proposition is predicated upon the testimony of the county treasurer at the trial, to the following effect: "I found in checking records that

there was a deed from the Hicks estate to Frances E. Kelley in 1930, transferring twenty-two acres. That twenty-two acres has been carried right along." The case was tried upon the theory that John K. and Frances E. Kelley, as husband and wife, owned the property in 1924. No issue was made by the defendant that they were not the owners, nor was any issue made by the plaintiff that Frances E. Kelley succeeded to the rights of her husband John K. Kelley. For aught we know, the deed from the Hicks estate, mentioned in the Peterson testimony, may have been a formality to clear the title. In any event, no issue was made upon this question before the trial court. We cannot now entertain it.

It is well settled that a question or issue not raised in the trial court will not be considered on appeal. J. H. Mulrein Plumbing Supply Co. v. Walsh, 26 Ariz. 152, 222 P. 1046; City of Glendale v. Coquat, 46 Ariz. 478, 52 P.2d 1178, 102 A.L.R. 837; Hallenbeck v. Yuma County, 61 Ariz. 160, 145 P.2d 837; Stephens v. Thomasson, 63 Ariz. 187, 160 P.2d 338. Since the deed mentioned by the treasurer was not put in evidence, nor any facts shown which would disclose that the Kelleys were not the owners of the property at the time of the original purchase by plaintiff from them, it is obvious that there were insufficient facts to determine the issue now made. The case does not come within the ruling of this court in Regan v. First Nat. Bank, 55 Ariz. 320, 101 P.2d 214.

While the record in many respects is not satisfactory, we cannot say that the lower court committed reversible error. The judgment is affirmed.

STANFORD, C. J., and LaPRADE, J. concurring.