457 P.2d 312

H. S. HACKIN, Charlotte E. Hackin, his wife, Hackin Plumbing & Heating Co., and Rosalind Gallai, Appellants,

v.

PIONEER PLUMBING SUPPLY CO., an Arizona corporation, and Allied Mutual Insurance Co., an Iowa corporation, Appellees.

No. 1 CA–CIV 564.

Court of Appeals of Arizona.

July 15, 1969.

As Corrected on Denial of Rehearing Sept. 8, 1969.
Review Denied Oct. 28, 1969.

**152**

Stewart & Pickrell, by Harry A. Stewart, Jr., Phoenix, Johnson, Bebeau & Timbanard, by R. E. Johnson, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by James H. O'Connor, Phoenix, for appellee, Pioneer Plumbing Supply Co.

MOLLOY, Judge.

Initially, we answer questions raised as to the jurisdictional scope of this appeal, *i. e.*, what judgments are on review? Two cases were consolidated below for trial purposes. The one, herein referred to as "action No. 87," was a suit by Pioneer Plumbing to foreclose a mortgage. H. S. and Charlotte Hackin and H. S. Hackin Plumbing & Heating Co., were named as defendants. Subsequently, Hackin's sister, appellant Rosalind Gallai, was joined as a defendant, and appellee, Allied Mutual Insurance Company, intervened as a plaintiff. The latter action, "No. 26" was a suit by Pioneer for damages, compensatory and punitive, against the Hackins, the plumbing corporation, one Orsini, and Crown Plumbing & Heating Company. Neither Gallai nor Allied Mutual were parties to this latter suit.

Pioneer Plumbing prevailed in both actions, which were tried to the court. Separate findings of fact and conclusions of law were entered and separate formal written judgments were entered on June 23, 1966.

On July 27, 1966, a notice of appeal was filed which was captioned in action No. 87. The contention is made that this notice did not pertain to action No. 26. Assuming this to be so, however, we find that there was a timely motion for new trial in No. 26 and a timely notice of appeal from the written order denying this motion for a new trial on November 10, 1966. We therefore find no jurisdictional impediment to our review of both cases. 4 A.R.S. § 12–2101, subsec. F, par. 1, as amended; Rule 58(a), as amended, R.Civ.P., 16 A.R.S.; and *see* Howard P. Foley Company v. Harris, 4 Ariz.App. 294, 419 P.2d 735 (1966).

Addressing ourselves to the merits, we find a major contention is directed to the trial court's denial of a jury trial to the appellants. The procedural history giving rise to this contention follows.

A motion to set action No. 87 for trial was filed by Pioneer on September 5, 1963, and a similar motion was filed by Pioneer as to action No. 26 on October 18, 1963. The only demand for a jury trial made before a trial date was set was by Pioneer, and this was only as to action No. 26.

A May 5, 1965, minute entry order in the consolidated actions recites:

"IT IS FURTHER ORDERED upon stipulation of *all* parties, that a jury trial is waived before pre-trial." (Emphasis added)

There has never been an effort, by motion or otherwise, to correct this minute entry to which we import verity, State v. Anders, 1 Ariz.App. 181, 400 P.2d 852 (1965), nor has there ever been a formal motion made to the court to be relieved of this stipulation. Rule 38(a), R.Civ.P., 16 A.R.S., preserves the right of trial by jury. Rule 38(b), as amended, provides:

"Any person may demand a trial by jury of any issue triable of right by jury.

The demand may be made by any party by serving upon the other party a demand therefor in writing at any time after the commencement of the action, *but not later than the date of setting the case for trial or ten days after a motion to set the case for trial is served, whichever first occurs*. The demand for trial by jury may be endorsed on or be combined with the motion to set, but shall not be endorsed on or be combined with any other motion or pleading filed with the court." (Emphasis added)

Rule 38(d) provides:

"The failure of a party to serve a demand as required by this Rule and to file it as required by Rule 5(g) constitutes a' waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."

Rule 39(a) provides:

"When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded *shall* be by jury, unless:

"1. The parties or their attorneys of record, by written stipulation filed with the court *or by an oral stipulation made in open court and entered in the record,* consent to trial by the court sitting without a jury, or

\* \* \* \* .\* \*"

(Emphasis added)

Thus, we see that, in both actions, all parties except Pioneer waived a jury trial by failing to make a timely demand, and, by the stipulation of May 5, 1965, Pioneer waived its demand and the other parties precluded themselves from relying upon Pioneer's previous demand for a jury trial. *See* Mozes v. Daru, 4 Ariz.App. 385, 420 P.2d 957 (1966).

After these events, on September 10, 1965, a written demand for a jury trial was filed on behalf of "H. S. Hackin" on an instrument captioned *only* in 141026 (in which action Gallai was not a party). This demand was denied at a pretrial conference held on this same day. An identical demand was filed on October 5, 1965. This demand was denied on October 14, 1965.

A petition to this court for writ of prohibition or mandamus was made on behalf of "H. S. HACKIN and CHARLOTTE E. HACKIN, his wife, HACKIN PLUMBING & HEATING CO.," seeking relief to compel a jury trial. This petition was denied, after an informal hearing, on October 27, 1965, with the court's explanation for denying extraordinary relief, reading in part: "We express no opinion as to whether or not the discretion exercised by Judge Sterling in this matter is or is not reviewable on appeal." [1]

On November 17, 1965, a "motion" for jury trial in the consolidated action was filed in the trial court on behalf of "H. Samuel and Charlotte E. Hackin," and simultaneously with a "demand" for jury trial filed on behalf of the "defendant H. S. Hackin." On November 19, 1965, the demand for jury trial was denied, and the case went to trial to the court without a jury, as scheduled, on November 29, 1965.

Regarded tolerantly, as we believe we should regard requests for jury trial, we accept these various demands and motions to be a sufficient effort to be relieved of the May 5 stipulation and a request for a jury trial. In view of the contentions of Pioneer that the Hackins were the alter egos of the defendant corporations in these actions, which contentions were adopted as findings by the trial court, we believe these requests for a jury trial were effective as to the corporate defendants.

Whether or not a litigant should be relieved from the consequences of waiver of a jury trial, is generally regarded as being in the discretion of the trial court. Lee v. Giosso, 237 Cal.App.2d 246, 46 Cal.Rptr.

---

1. Even without such qualification, the denial of special writ relief is ordinarily not the law of the case. *See* McRae v. Forren, 5 Ariz.App. 465, 428 P.2d 129 (1967); City of Glendale v. Skok, 6 Ariz.App. 342, 432 P.2d 597 (1967).

803 (1965); People v. Catalano, 29 Ill.2d 197, 193 N.E.2d 797 (1963), cert. denied, 377 U.S. 904, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964); Alford v. Drum, 68 N.M. 298, 361 P.2d 451 (1961); 50 C.J.S. Juries § 111(1). The trial court has to consider not only the rights of the litigants but also the burden of shifting a trial to the jury docket. Glogau v. Hagan, 107 Cal.App.2d 313, 237 P.2d 329 (1951). Generally speaking, appellate courts do not interfere with the trial court's discretion, absent an abuse thereof. Tomlin v. Pope & Talbot, Inc., 282 F.2d 447 (9th Cir. 1960); 5 Moore's Federal Practice § 39.09.

We see no abuse of discretion here in the denial of the defendants' demands in civil action No. 87. It is a matter of which we take judicial knowledge, see State v. Superior Court in and for County of Pima, 4 Ariz.App. 562, 564, 422 P.2d 393, 397 (1967), vacated on other grounds, 102 Ariz. 388, 430 P.2d 408 (1967), that the Maricopa County Superior Court is surfeited with litigation, and that a change from a court trial to a jury trial interferes with efficient methods of trial scheduling. Our view is fortified by the fact that the main thrust of the defendants' efforts to be granted a jury trial is in action 26, in which case we find that the denial of a jury trial was erroneous because of the filing of an amended complaint on September 22, 1965.

When an amended pleading raises a new issue, a right to a jury trial accrues as to the new issue. Allen Steel Supply Co. v. Bradley, 89 Idaho 29, 402 P.2d 394 (1965), petition denied, 89 Idaho 29, 403 P.2d 859 (1965); Lucas v. Cate, 99 N.H. 134, 106 A.2d 200 (1954); Davis v. Severson, 71 N.M. 480, 379 P.2d 774 (1963). But see, contra, Hayden v. Friedman, 190 Cal. App.2d 409, 12 Cal.Rptr. 17 (1961). When an amendment does not change the basic nature of the case, a party who has waived the right to a jury trial is not entitled to

one as a matter of right. Lanza v. Drexel & Co., 271 F.Supp. 684 (S.D.N.Y. 1967); Sellman v. Haddock, 66 N.M. 206, 345 P.2d 416 (1959); 2B Barron and Holtzoff, Federal Practice and Procedure § 873; 5 Moore's Federal Practice § 38.41.

We have examined first amended complaint and the September 22 amended complaint and conclude that the latter injected a basically different cause of action. The earlier pleading contained a conclusory allegation that the defendants were guilty of a " * * * conspiracy to defraud * * *" Pioneer. But this must be taken in the light of the factual allegations of this complaint which pertain entirely to the transfer of assets by Hackin to avoid Pioneer's retained ownership of materials sold to Hackin. For relief, the complaint relies upon conversion and replevin theories. There are no allegations of misrepresentations, either factual or promissory. The September 22 amended complaint contains allegations of promissory fraud, and sounds principally in fraud as the theory for relief. We are of the view that this amended complaint is sufficiently different from the prior pleading so that the waiver of a jury trial as to the second latter is not binding as to the amended complaint under the authorities cited above.

In situations such as this, where the record is clear as to the waiver of a jury trial, one seeking relief from such waiver has a duty to point out to the court the circumstances requiring relief. Sheinfeld v. Alcorn Combustion Company, 41 F.R.D. 465 (S.D.Tex. 1967); Sweeney v. Veneziano, 70 N.J.Super. 185, 175 A.2d 241 (1961); Carolyn Schnurer, Inc. v. Stein, 29 N.J. 498, 150 A.2d 490 (1959). Although we find appellants' attempts to call this fact to the trial court's attention in their October and November demands for a jury trial are somewhat abstruse,[2] we are of the

---

2. The October 5, 1965, demand for a jury trial, in the appended memorandum of authority, directs the trial court's atten-

tion " * * * to the fact that the service of the last pleading was made this date * * *" It also cites Rule V,

opinion that they did so in suffficiently explicit manner so as to be entitled a jury trial on the new issue. The appeal here is from a denial of a motion for new trial. One of the grounds advanced for new trial was denial of a jury. Hence, reversible error was committed when a new trial was denied in action 26.

Various additional questions are raised in action No. 87 (the foreclosure action) but the principal one concerns the extent of the indebtedness intended to be secured by this May 24, 1962, mortgage securing a note in the face amount of $150,000. Pioneer and the Hackins began doing business in August, 1961. Pioneer sold plumbing materials and supplies to the Hackins doing business under various names. In 1961, the Hackins formed an Arizona corporation known as H. S. Hackin Plumbing & Heating Company, in which they were the sole stockholders and directors. Credit arrangements varied until March, 1962, when a misunderstanding arose as to the credit terms and the proper balance due to Pioneer for previous sales. In April, 1962, Pioneer requested security for the account balances and the balance was settled on April 16, 1962, at $88,123.51, represented by two promissory notes bearing that date. Subsequent negotiations between the parties, represented by counsel, resulted in the execution of a credit agreement dated May 9, 1962, a promissory note dated May 18, 1962, and this mortgage. Additional credit was extended to Hackin, both before and after the May 9 agreement, in the total amount (excluding the April notes) of approximately $75,000. Hackin contends that the mortgage did not secure the indebtedness represented by the April notes, but only indebtedness incurred subsequently.

The May 9 agreement, between Pioneer and Hackin Plumbing, recited the fact that the parties had been doing business upon differing credit arrangements, that Hackin was then indebted in a substantial amount to Pioneer for materials theretofore furnished, that misunderstandings had arisen with respect to credit arrangements and that the parties were desirous that future transactions be governed by the terms of the agreement.

The agreement further recited:

"8. In view of the fact that HACKIN is indebted to PIONEER *in substantial sums of money at this time and may be indebted in additional sums of money from time to time,* as an inducement to PIONEER to extend such credit terms heretofore and hereafter, HACKIN *agrees to give PIONEER the following collateral security*:

\* \* \* \* \* \*

"D. Within Five (5) days from date, Mr. and Mrs. HACKIN agree to execute and deliver to PIONEER a real estate mortgage upon a certain Eighty (80) Acre tract \* \* \* PIONEER agrees that it will not commence any foreclosure action upon said mortgage until HACKIN has defaulted *any of the terms and conditions of this credit agreement* \* \* \*"

(Emphasis added)

The agreement provided that, if the monthly payment due on the 10th day of the month should be 20 days or more late, "\* \* \* then in such event the *entire existing balance of all sales from PIONEER to HACKIN* shall be considered in default and the entire unpaid balance shall thereupon immediately become due and payable \* \* \*" (Emphasis added)

Uniform Rules of Practice, which prescribed, *inter alia*, the form and contents of a Certificate of Readiness:

"The undersigned attorney hereby certifies that:

"(1) The issues in the above captioned case have actually been joined;

\* \* \* \* \* \*"

On October 4, one day prior to the filing of this jury demand, the appellants challenged the amended complaint in action 26 by a motion to strike, pointing out to the court:

"\* \* \* the amended pleading was permitted by the Court solely for the purpose of clarafication [*sic*] of the pleadings and not to add any additional cause of action. The said paragraph three interjects into the lawsuit an entirely new cause of action \* \* \*"

We find the trial court's conclusion that the May 9 agreement and the mortgage executed pursuant thereto covered *all* indebtedness of Hackin to Pioneer to be well-supported in the evidence. The agreement patently deals with both past and future indebtedness and included in the description of collateral security is the mortgage in question. If the language of the contract itself is lacking in specificity, the circumstances of its execution lend clarity to the parties' intention. Nor do we construe the following provision of the May 9 agreement to negate this intention:

"1. None of the terms and conditions of this Agreement shall be deemed to modify any agreements including Promissory Notes given in connection with purchases by HACKIN from PIONEER prior to April 17, 1962."

The only purpose for this insertion is to indicate that the credit arrangements set out in the May 9 agreement did not alter the terms of payment delineated in the April 16 promissory notes.

Appellants contend that the May 9 agreement is unenforceable and void because (1) it "\* \* \* lacks mutuality and is vague and ambiguous," and (2) it violates the Sherman Antitrust Act, the Clayton Act and A.R.S. § 44–1401 et seq.

As to the alleged lack of mutuality, the agreement to execute a note and mortgage is enforceable, being founded partly on past consideration and partly on executory consideration. *See* Kahn v. Lischner, 128 Cal.App.2d 480, 275 P.2d 539 (1954); 17 C.J.S. Contracts § 121. Furthermore, since this agreement as to security has been wholly executed, there is no question of consideration left for adjudication. Fox Chicago Realty Corporation v. Zukor's Dresses, 50 Cal.App.2d 129, 122 P.2d 705 (1942); and *see* Perry v. Farmer, 47 Ariz. 185, 54 P.2d 999 (1936).

We find no merit in appellants' claim that the May 9 agreement is rendered void because of ambiguity. Ambiguity per se does not impair the validity of a contract. Henderson v. Jacobs, 73 Ariz. 195, 239 P.2d 1082 (1952); Lipton v. Johansen, 105 Cal. App.2d 363, 233 P.2d 648 (1951), but only when coupled with a lack of meeting of the minds of the parties. H & W Tool Co. v. Meshew, 5 Ariz.App. 180, 424 P.2d 828 (1967). At the worst, this contract is ambiguous, but we are of the opinion that there was a sufficient mutual understanding of the agreement reached to constitute an enforceable contract. Hays v. Underwood, 196 Kan. 265, 411 P.2d 717 (1966); Wetherbee v. Gary, 62 Wash.2d 123, 381 P.2d 237 (1963). This is particularly so, where, as here, the parties have indicated their understanding by their performance. Bohman v. Berg, 54 Cal.2d 787, 8 Cal.Rptr. 441, 356 P.2d 185 (1960); Platts v. Arney, 46 Wash. 2d 122, 278 P.2d 657 (1955).

The antitrust argument is predicated on that portion of the May agreement which obligated Hackin to obtain Pioneer's approval before entering into any new plumbing contract in excess of $10,000. Also, Hackin Plumbing agreed not to undertake any new plumbing jobs in excess of $10,000 unless it first secured a commitment from Pioneer to supply the necessary materials, and if Pioneer refused to so commit itself, then Hackin was to be "free" to deal with other suppliers. Pioneer agreed that supplies furnished by it would be "competitive to other wholesalers' prices quoted in good faith." When Hackin bought elsewhere, Pioneer was to be given adequate notice as to these purchases, to enable it to segregate its materials from those furnished by another supplier.

Without citation of authority to support their position, appellants argue that, if the agreement is void, the note and mortgage executed pursuant thereto are likewise void. Assuming, *arguendo*, as contended by appellants, that Hackin's agreement to purchase its materials requirements constituted an illegal restraint

of trade,[3] hence unenforceable, the agreement to execute the note and mortgage as security for past and future indebtedness is not ipso facto invalid. Although non-separability of various portions of a contract will result in total invalidity where a portion thereof is invalid, Neil B. McGinnis Equipment Co. v. Riggs, 4 Ariz. App. 556, 422 P.2d 187 (1967), such is not case where the portions are separable. Vaughn v. Vaughn, 91 Idaho 544, 428 P.2d 50 (1967). A lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time for the same consideration. Reilly v. Korholz, 137 Colo. 20, 320 P.2d 756 (1958); Werner v. Knoll, 89 Cal. App.2d 474, 201 P.2d 45 (1949); 17 C.J.S. Contracts § 289. See also Tom Maxwell Realty, Inc. v. Jennings, 93 Ariz. 146, 379 P.2d 131 (1963). There is no showing that, because of the noncompetitive clause, Hackin was obliged to pay more than the going rate for any merchandise. It would indeed be a harsh law that would declare void all of the provisions of the May agreement and all collateral given in pursuance of it to secure legitimate debts. We hold the challenged portion of the May agreement to be separable from its other provisions providing for payment, acceleration and security for the merchandise sold on credit.

■ Appellants contend that, notwithstanding the May agreement be valid and and enforceable, there was no breach thereof and hence Pioneer had no right to accelerate the future payments to be made. The May 9 agreement contained a clear acceleration clause which pertained to all indebtedness between the parties. The trial court found a default and this finding has not been demonstrated to be clearly erroneous. See Rule 52(a), R.Civ.P., 16 A.R.S. We therefore reject this contention.

■ Appellants complain of the application of certain moneys received by Pioneer to the April 16 promissory notes. They argue that, had these moneys been applied to obligations incurred subsequent to the date of these notes, there would have been no breach of the May 9 agreement, hence no default thereunder and no right to foreclose the mortgage. The major premise for this argument is that the $150,000 note and mortgage were only intended to represent and secure obligations incurred subsequent to the April notes. This premise has already been rejected in this opinion.

Moreover, as there were no directions as to the application of these moneys, Pioneer had the right to apply the moneys as it saw fit. Cameron v. Sisson, 74 Ariz. 226, 246 P.2d 189 (1952); Webb v. Crane Company, 52 Ariz. 299, 80 P.2d 698 (1938).

■ Appellants also attack the trial court's finding that the May 9 agreement was breached by Hackin's failure to adhere to his agreement to pay premiums on a $100,000 life insurance policy. The contract provided:

"C. Within Ten (10) days of the date of this Agreement, H. S. HACKIN personally agrees to apply for a life insurance policy * * * furnishing PIONEER with duplicate receipts of premium payments from time to time as may be requested by PIONEER."

We cannot construe this provision to mean that Hackin was only required to apply for the life insurance policy. Such construction would render nugatory the provision requiring that duplicate receipts of premium payments be furnished to Pioneer upon request. Reading the provision as a whole, it clearly imposes upon Hackin the obligation to apply for and pay the required premiums on the life insurance policy.

■ The Hackins' attack on the imposition of personal liability is groundless. The April promissory notes were signed by

---

3. Very little authority is cited to support this contention and the decision of Tucson Federal Sav. & L. Ass'n v. Aetna Invest. Corp., 74 Ariz. 163, 245 P.2d 423 (1952), would seem to refute the argument.

the Hackins personally and the May 9 agreement provided:

"A. In consideration of the personal benefit to SAM HACKIN and CHARLOTTE HACKIN, husband and wife, as stockholders and HACKIN PLUMBING & HEATING CO., said husband and wife by their signatures below set forth, have evidenced their personal guarantee of all sums of money hereafter owing from HACKIN to PIONEER * * *"

Pioneer's mortgage was recorded May 25, 1962. A mortgage on the same property was given by the Hackins to appellant Hackin's sister, Gallai, prior thereto but was not recorded until July 9, 1962. The trial court refused to grant priority to the Gallai mortgage. A.R.S. § 33–411, subsec. A provides:

"No instrument affecting real property is valid against subsequent purchasers for valuable consideration *without notice*, unless recorded as provided by law in the office of the county recorder of the county in which the property is located." (Emphasis added)

At the time of the execution of the mortgage to Pioneer, there was no knowledge of the existence of a prior encumbrance, hence appellant Gallai was not entitled to the relief sought.

Appellants challenge the trial court's refusal to reform the May agreement to extend a contracted redemption period from thirty-nine months after default to thirty-nine months after the date of suit to foreclose. To entitle one to reformation, it is essential to show by clear, convincing and satisfactory evidence that a definite intention on which the minds of the parties had met preexisted the written instrument and that the mistake occurred

in its execution. Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78 (1946); Longshaw v. Corbitt, 4 Ariz.App. 408, 420 P.2d 980 (1966); State v. Ashton Company, 4 Ariz. App. 599, 422 P.2d 727 (1967). The trial court found that the May 9 agreement, as executed, included all the terms *mutually* agreed upon. This finding which has substantial support in the evidence must be affirmed on appeal.

We need not belabor the details of appellants' counterclaims for damages allegedly sustained as a consequence of Pioneer's breach of the May 9 agreement. Having found that Hackin breached the agreement, the subsequent conduct of Pioneer in asserting its claims was not wrongful and could form no predicate for the Hackins' counterclaims. Restatement, Contracts § 274; 17A C.J.S. Contracts § 473.

They likewise made claims of fraud and "business compulsion" which were denied by the trial court. The court found that Hackin signed the May 9 agreement of his own free will, under no economic or physical duress, that Hackin was unworthy of belief, and resolved the counterclaims in Pioneer's favor for the reason that there was no credible or competent evidence to support them. Application of the "clearly erroneous" rule forecloses appellate interference with these findings.

The judgment in Cause No. 140687 is affirmed and the judgment in Cause No. 141026 is reversed and remanded for further proceedings not inconsistent herewith.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.