480 P.2d 365

Lawrence E. HOWELL and Selma W. Howell, husband and wife, Products Marketers Inc., Appellants,

v.

Charles L. REMME and Marjorie Remme, husband and wife, Appellees.

No. 2 CA–CIV 861.

Court of Appeals of Arizona, Division 2.

Feb. 10, 1971.

Erik M. O'Dowd, Tucson, for appellants.

Paul G. Rees, Jr., Tucson, for appellees.

HOWARD, Judge.

This is an appeal from the Superior Court of Pima County, Honorable Lee Garrett presiding.

In 1962, appellants, defendants below, sought to obtain a certain amount of capital for the promotion of a child's toy called a "clutch ball." Appellees, plaintiffs below, were approached and they ultimately invested $250.00 in the enterprise. The

success of the promotion was less than overwhelming and the investors realized nothing from their investment.

In 1965, there was an indication from one of the large toy manufacturers that they would be interested in expanding sales of the ball. Appellants sought out the original investors to raise additional capital but none of them wished to invest further. At this time, a new agreement (between appellants and the investors) was entered into. This agreement is the subject of controversy before us now.

The contract provided that the investors would transfer all of their interest in the ball project, acquired by them in 1962, to the appellants. In return, the investors were to receive, according to the language of the instrument, " * * * nineteen (19) per cent of gross sales of any balls manufactured according to the design of the aforementioned patents and sold by Second Party, (appellant) or his assignee." According to the agreements' terms, the investors were to receive such percentage of the 19 per cent as their investment bore to the total investment of $1,900.00 originally made by all of them. In the case of appellees, this was two and one-half per cent. Appellants' attorney drew up the agreement and all the investors signed it.

The toy began to show a certain amount of successs and in 1966, appellants mailed to each investor a profit and loss statement and a check. Appellees' check amounted to $61.57. Appellees computed two and one-half per cent of gross sales and arrived at a figure of $194.85. They then instituted this suit against appellants. Appellants counterclaimed seeking reformation of the contract based on mutual mistake. The pretrial order, by stipulation, provided that the issue of reformation and construction of the contract should be tried to the court without a jury and the accounting would thereafter be referred to a special master. It is from an adverse decision of the court that defendants appeal.[1] The appellees allege that they signed a contract which clearly states they are to receive two and one-half per cent of gross sales of the ball. Appellants state that this language is in fact in the contract but that they meant the agreement to be that appellees would get two and one-half per cent of gross sales "less normal operating expenses." They claim that they and appellees agreed to something other than what exists in the agreement and that it should be reformed to show the true intent of the parties.

We agree with appellants that reformation is a proper remedy to correct an error in an agreement which arises from a mutual mistake. Chantler v. Wood, 6 Ariz.App. 134, 430 P.2d 713 (1967). We also find, however, that where mutual mistake is urged as a ground for reformation, it must be established by evidence that is clear, convincing and satisfactory. Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78 (1946); Hackin v. Pioneer Plumbing Supply Co., 10 Ariz.App. 150, 457 P.2d 312 (1969); c.f. State v. Ashton Co., 4 Ariz. App. 599, 422 P.2d 727 (1967). This evidence must be something more than a mere preponderance. Davis v. Kleindienst, supra; 13 Williston on Contracts 3rd ed. § 1547.

In the case sub judice, appellees had as proof of their intent, a signed instrument clearly declaring they were entitled to two and one-half per cent of *gross sales* of the toy. The proof offered by appellants to show a different intent on the part of appellees was: (1) Testimony by appellants that they had explained to appellees that the agreement was to be two and one-half per cent of sales less operating expenses (appellees deny this conversation took place) and, (2) the following testimony by Charles Remme on cross-examination:

"Q. So, would it be correct to say that you signed that and at the time you signed it you were told by Mr. Howell it

---

1. The judgment entered complies with Rule 54(b), Rules of Civil Procedure, 16 A.R.S.

**30**

would be helpful to have your signature for the purposes of implementing *this sale* of eighty per cent of the interest in the Play Ball and in return for that you would receive some return for your signature?

A. I don't think Mr. Howell said that I would receive any return. He said there was a possibility that this additional money may get this thing off the ground and maybe make some money. We hadn't made any evidently for two or three years.

Q. No profits from the sales?

A. Not that I know of.

Q. And 'If I make some money you would make a profit'?

A. Yes, I think so.

Q. You didn't anticipate other than you would get some kind of percentage of profit if made on the sale, is that correct?

A. That's right." (Emphasis added.)

■ Appellants contend that the above testimony clearly constituted an admission by appellees that they never intended the contract to be based upon "gross sales." We do not agree. It is important to read this testimony in the light of Remme's prior testimony. He had just testified that the reason he signed the agreement was because appellants told him that they needed the signatures of all of the parties involved so that they, the appellants, could sell an 80% interest in the project in order to raise money to finance the sale of the ball. This testimony can be just as easily read to mean appellees anticipated a profit on money invested and that the "sale", which we note is in the singular, referred to in the last question and answer, pertains to the sale of the 80% interest and not to *sales* of balls. In other words, as a result of the sale, he might eventually make a profit. The allegedly damaging testimony is at least very ambiguous and not of the

clear and convincing quality needed for reformation. The appellants asked Remme another question along this line but then withdrew the question. Appellants in an off-handed way cite to us the testimony of two other investors and signatories of the agreement in question. This testimony was never in evidence, but came in by way of an offer of proof which was rejected by the trial court. Appellants have not presented this rejection as one of the questions or subsidiary questions for review. Assuming arguendo that they have, the court did not err in rejecting the testimony.

This court stated in the case of State v. Ashton Co., supra:

"To entitle one to reformation, it is essential to show that a definite *intention* on which the minds of the parties had met pre-existed the written instrument and that the mistake occurred in its execution. [Citation omitted.] If the minds of the parties had not met in a prior agreement, there is nothing to be corrected. [Citation omitted.]"

Appellate courts will not disturb the findings of fact of the trial court unless they are clearly erroneous. Park Central Development Co. v. Roberts Dry Goods, Inc., 11 Ariz.App. 58, 461 P.2d 702 (1969); 52(a) Rules of Civil Procedure, 16 A.R.S. The findings of the trial court are binding on an appellate court if the evidence is such that it reasonably sustains them. Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456 (1945). The reviewing court will not substitute its judgment for that of the trial court as to findings based on conflicting evidence. Sato v. First National Bank of Arizona, 12 Ariz. App. 263, 469 P.2d 829 (1970). The evidence in this case is such as to preclude us from disturbing the findings of the trial court.

■ Another problem is encountered, however, in regard to certain of the findings of fact and conclusions of law of the

trial court. Apparently, sometime prior to the bringing of this suit, one of the other investors, one Gorm Loftfield, purportedly assigned his five per cent interest in the venture to appellees' attorney acting as agent for appellees.

During trial, the fact of this assignment was offered in evidence which was objected to by appellants. Appellees stated that they would like to enter this assignment into evidence *solely* for the purpose of impeachment. This was allowed. At conclusion of the trial, the presiding judge made findings of fact and conclusions of law to the effect that not only were appellees entitled to the two and one-half per cent of gross sales due on his contract, but that they were also owed an additional five per cent of gross sales under the alleged assignment of Gorm Loftfield.

Appellants have properly appealed these findings and conclusions under the provisions of Rules of Civil Procedure 52(b), 16 A.R.S., which states in part:

"* * * When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the superior court an objection to such findings or has made a motion to amend them or a motion for judgment."

In the case at bar, evidence of the alleged assignment was entered only for impeachment purposes and we therefore hold that the findings and conclusions pertaining to this assignment were not supported by the evidence and are reversed.

The judgment of the trial court is reversed as to the award of 5% of gross sales based on the alleged Loftfield assignment to appellees but is affirmed in all other respects.

KRUCKER, C. J., and HATHAWAY, J., concur.